UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:14-CV-598-CRS-CHL

JAMES H. POGUE,                                                                          Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,          Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on a motion to compel (DN 43) filed by Defendant The Northwestern Mutual Life Insurance Company ("Northwestern Mutual").  Northwestern Mutual seeks an order requiring Plaintiff James H. Pogue ("Pogue") to produce his complete Social Security disability file.  Pogue has filed a response in opposition and Northwestern Mutual has filed a reply.  (DN 44, 45.)  This matter is now ripe for review.  For the following reasons, the motion to compel (DN 43) is **granted**.

## BACKGROUND

This action arises from Northwestern Mutual's denial of a disability insurance claim filed by Pogue.  Pogue is a physician who alleges that, due to a number of mental health conditions and at least one physical condition, he is completely disabled from practicing medicine.  On September 23, 2015, Pogue's counsel sent Northwestern Mutual's counsel a letter stating that the Social Security Administration ("SSA") had determined that Pogue is totally and permanently disabled and, as a result, he was renewing his request for disability insurance benefits.  (DN 43-2.)  Attached to this letter from Pogue's counsel were copies of the SSA's notice to Pogue of the fully favorable determination and the decision itself.  (*Id.* at 5-12.)  On September 30, 2015, counsel for Northwestern Mutual responded, requesting that Pogue execute a consent for release

of information that would allow Northwestern Mutual to obtain from the SSA a copy of Pogue's SSA file.  (DN 43-3.)

On November 9, 2015, Pogue's counsel advised Northwestern Mutual's counsel, by email, that Pogue would not sign the consent form.  (DN 43-4.)  Rather, he stated that the "file was provided [] on September 23, 2015," inquired as to "[w]hy [counsel was] still sending [his] letter," and requested that counsel "correct [his] misrepresentations to the Court" on this issue.  (DN 43-4 at 2.)  On October 23, 2015, Pogue's counsel produced a number of documents that Pogue represents constitute the entire SSA file.  On November 6, 2015, Northwestern Mutual's counsel responded that it seeks the official, entire file via a signed consent.  (DN 43-4.)  Pogue's counsel then stated by email of November 9, 2015, "You have the complete file.  Your request is redundant and unnecessary."  (*Id.*)  On the same day, November 9, 2015, Northwestern Mutual served a single supplemental request for production of documents that read: "Produce an executed copy of the attached Consent for Release of Information."  (DN 43-5 at 5.)  In his response[1] Pogue refused to produce the document requested.  He first objected to the request on the ground that it violates Rule 34 of the Federal Rules of Civil Procedure by requiring him to produce a document that does not exist.  (DN 43-6 at 2.)  He further stated as follows:

> Response:     I do not have a completed release in my possession. However, I previously requested a complete copy of my file from the Social Security Administration.  I have attached all of the documents I was provided.  Pogue 243-558 is a complete and accurate copy of the Social Security filed [sic] I received.

(*Id.*)

---

[1]     Pogue's response to the request for production of documents is dated October 10, 2015.  That date is nearly one month *earlier* than November 6, 2015, the date on which Northwestern Mutual served its discovery request. Both the motion and the response state that the response was served on *December* 10, 2015.  (DN 43-1 at 3; DN 44 at 1.)  Accordingly, the Court finds that the date of the response was December 10, 2015.

2

On December 22, 2015, Northwestern Mutual filed its motion to compel.  Northwestern Mutual contends that Pogue has put his SSA file in issue by asserting that it may affect his eligibility for disability insurance benefits.  It states that the file will contain information relevant to this action, such as the nature of Pogue's alleged disability.  Northwestern Mutual argues that pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, it is authorized to request production of documents within the responding party's possession, custody, or control, and that documents which a party has a legal right to obtain fall within the scope of the Rule.  It contends that Pogue alone has a legal right to obtain the SSA file and points to case law that it believes supports its position that the Court should order Pogue to sign the consent.

Moreover, Northwestern Mutual argues, obtaining a written consent from Pogue is the least expensive and most efficient means of obtaining the SSA file in this case and is in line with common practice in civil discovery.  In response to Pogue's argument that it seeks to compel him to create a new document, Northwestern Mutual argues that it simply seeks his signature so that it may obtain existing documents.

In response (DN 44), Pogue makes two major arguments. First, Pogue contends that Northwestern Mutual failed to comply with LR 37.1 because, "[a]fter receiving Dr. Pogue's response" to its request for production, it filed the motion to compel without first "mak[ing any] effort to resolve its alleged discovery dispute."  (*Id.* at 1.)  Pogue argues that the Court should deny the motion to compel on this procedural ground and award him fees and costs associated with the motion.  Second, Pogue argues, even if the Court does reach the merits of the motion, he has already produced the contents of the SSA file on two occasions and that to require him to sign the consent form would be duplicative.  He further argues, as he did in response to the

request for production, that the motion to compel demands that he create a document that does not exist, which is not permitted under Rule 34.  Additionally, Pogue contends, the underlying basis for Northwestern Mutual's motion is a belief that he "may have hid [sic] pertinent documents or did not provide all the documents he received" from SSA.  (DN 44 at 5.)  He reiterates that he has already provided to Northwestern Mutual a complete and accurate copy of the SSA file and accuses Northwestern Mutual of "mak[ing] an issue where none exists in an effort to tarnish [his reputation] and to further delay the case."  (*Id.*)

Northwestern Mutual filed a reply (DN 45) in support of its motion.  Northwestern Mutual argues that it fulfilled its obligations pursuant to Rule 37(a)(1) and LR 37.1 by requesting on three occasions that Pogue sign the consent for release.  Additionally, Northwestern Mutual argues, Pogue should not be permitted to rely on uncertified and unauthenticated documents that purportedly compose the SSA file rather than sign the consent form.  Like Pogue, Northwestern Mutual questions its opponent's motives, stating that, "[g]iven the simplicity of Northwestern Mutual's request, Plaintiff's continued refusal to execute the Consent for Release of Information casts doubt on the fullness of his prior disclosures."  (DN 45 at 6.)

## DISCUSSION

### 1.  Legal Standard

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery," provided that the party certifies to the Court that it has, in good faith, conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.  Fed. R. Civ. P. 37(a)(1); *see*

4

*id.* at (a)(3)(B)(iv) (providing that a party may move to compel production of documents requested under Rule 34).

The scope of civil discovery is set out in Rule 26(b)(1) of the Federal Rules of Civil Procedure.  The Rule states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  This language is broadly construed to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).  The scope of discovery is not without limits, however.  "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).

In the course of discovery, a party may request production of relevant, nonprivileged documents that are "in the responding party's possession, custody, or control[.]"  Fed. R. Civ. P. 34(a)(1).  "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody or control, *or has the legal right to obtain the documents on demand*."  *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (quoting Fed. R. Civ. P. 34(a)) (second emphasis added); *Bertrand v. Yellow Transp., Inc.*, 2010 U.S. Dist. LEXIS 52778, *3 (M.D. Tenn. May 28, 2010) ("Rule 34(a) . . . allows a party to request documents that are in the possession, custody or control of the party being served.").

5

### 2.  Application to this Case

#### a.  Compliance with Rule 37(a)(1) and LR 37.1

To begin, the Court finds that Northwestern Mutual has satisfied its obligations pursuant to Rule 37(a)(1) and LR 37.1 by certifying that before it filed the motion to compel, its counsel conferred in good faith with Pogue's counsel regarding the instant discovery dispute.  Pogue's argument that Northwestern Mutual failed to adhere to the terms of Rule 37(a)(1) and LR 37.1 is, at best, a red herring, and at worst, a mischaracterization of the events leading up to the filing of the motion.  As is clear from the written communications between counsel and the supplemental request for production and response thereto (DN 43-3 through 43-6), Northwestern Mutual's counsel made *repeated* good-faith attempts to confer with Pogue's counsel regarding this dispute, to no avail.  Still desiring an official copy of the SSA file, Northwestern Mutual's counsel was ultimately left with only one option: to file a motion to compel.

To the extent that Pogue suggests that it was incumbent upon Northwestern Mutual's counsel to make yet another attempt to confer on this issue following its receipt of Pogue's response to the supplemental request for production, Rule 37(a)(1) certainly did not require such action.  Northwestern Mutual provided the Court with a detailed description of its good-faith efforts to confer, copies of the written communications showing such efforts, and a formal certification as required by Rule 37(a)(1).  (*See* DN 43 at 2 (Counsel's Certificate of Compliance with Rule 37(a)(1).)  Any suggestion by Pogue that Northwestern Mutual failed to satisfy Rule 37(a)(1) and LR 37.1 necessarily fails.  Accordingly, Pogue's request for attorney's fees and other expenses associated with his response to the motion to compel is denied.

b. <u>Production of an Executed Consent to Release</u>

The Court now moves to the substance of the motion.  The Court finds that Pogue's SSA disability file is discoverable pursuant to Rule 26(b)(1).  Pogue appears to concede that the contents of the file are nonprivileged and relevant to both his claims and Northwestern Mutual's defenses.  Pogue has put in issue the SSA's determination that he is totally disabled.  He notified Northwestern Mutual of the determination, renewed his request for benefits pursuant to his disability insurance policy, and has indicated that he intends to use the SSA determination as support for his contention that he is entitled to benefits pursuant to the insurance policy.

The Court further finds that the entire SSA disability file is within Pogue's "control" for purposes of Rule 34(a).  Only Pogue has the ability to access the file, which he can do by requesting a copy of the directly from the SSA or signing the consent to release proposed by Northwestern Mutual.  *See, e.g.*, *Bertrand*, 2010 U.S. Dist. LEXIS 52778 at \*3 ("Plaintiff has control over his medical records because, by either granting or denying consent, he may determine who shall have access to them.") (citation omitted); *Brown v. Eli Lilly Co.*, 131 F.R.D. 176, 178 (Dist. Neb. 1988) (discussing plaintiff's control over her own medical records and whether she has control, for purposes of Rule 34, over her mother's medical records).

Pogue's objections to turning over the SSA file are that (1) Northwestern Mutual improperly requests that he "create" a document, which Rule 34 does not require him to do; and (2) to turn over the file would be duplicative, in that he has twice turned over what he claims are full and complete copies of the file.  Both of these arguments fail.

The Court need not devote significant time to Pogue's first point.  To be sure, the Rules do not require parties to create documents in response to discovery requests.  *See Harris v.*

*Advance Am. Cash Advance Ctrs.*, 288 F.R.D. 170, 172 (S.D. Ohio 2012) ("Defendant is not required to create documents in response to plaintiff's requests for discovery.") (additional citations omitted).  In this case, however, Northwestern Mutual does not seek to compel Pogue to *create* a document in response to its discovery requests.  It merely asks Pogue to execute a consent to release certain documents.  Signing and dating a document that has already been prepared by Northwestern Mutual is plainly not the equivalent of creating a document.[2]

Second, the Court finds that it is insufficient for Pogue to point to the documents that he previously provided to Northwestern Mutual's counsel rather than to sign a release that would allow Northwestern Mutual to obtain the documents directly from the SSA.  Again, there is no doubt that Pogue's SSA records are relevant to this action.  He has put them in issue because he notified Northwestern Mutual that he was renewing his request for disability benefits based on the SSA's finding of total disability, and because it appears that he intends to rely on the SSA's finding in support of his claims in this action.  *See, e.g.*, *Bertrand*, 2010 U.S. Dist. LEXIS 52778 at *4 (finding that plaintiff put his physical and emotional conditions at issue by, among other things, alleging he suffered serious health concerns and seeking damages for pain and suffering and emotional distress).

The Court concurs with and adopts the following reasoning from the Northern District of Indiana:

> In this case, as in others where the mental or physical condition of a party has been placed in issue, the practice of obtaining written consents for the release of records represents the least expensive and most efficient means of procuring information from medical or

---

[2]  Pogue's accusation that the motion to compel is a delay tactic by Northwestern Mutual is remarkable given that he could have avoided the time and effort of preparing a response to the motion to compel, as well as the time waiting for a ruling by the Court, by simply executing the consent to release.  Pogue's actions in relation to this discovery dispute reek of gamesmanship.

> counseling providers. Court orders directing providers [or, in this case, the SSA] to produce their records often prove unsatisfactory since they require the party seeking production to apply to the court each time the identity of an individual provider is discovered. Subpoenas duces tecum, which must be accompanied by witness fees and records deposition notices, can prove costly and may result in additional delay. And orders directing the parties themselves to procure and produce their records give no assurances that all pertinent documents will be provided.

*Smith v. Logansport Comm. School Corp.*, 139 F.R.D. 637, 649 (N.D. Ind. 1991); *id.* (requiring plaintiff to produce executed consents authorizing release of counseling records to counsel for opposing party).[3] This case is even less complicated than the situation described in the excerpt above, in that Northwestern Mutual seeks a release of information from only one entity, the SSA.

Northwestern Mutual has requested – through informal communications with opposing counsel, a formal discovery request, and a motion to compel – a copy of Pogue's *entire* SSA file. In response to its counsel's repeated requests, Northwestern Mutual has received assurances that Pogue already produced the entirety of the file. This is insufficient. As the Northern District of Indiana aptly stated, Pogue's counsel's statements that he has already produced the entire file "give no assurances that all pertinent documents [have been] provided." *Smith*, 139 F.R.D. at 649. The numerous existing discovery disputes in this case and the tenor of the email communications between counsel show the contentious nature of this case. The Court will not require Northwestern Mutual to rely upon the representations of Pogue's counsel as to the completeness of the existing production.

---

[3] The Court acknowledges that some courts have questioned their own authority to order parties to sign medical releases, as well as the wisdom of issuing such orders. *See, e.g.*, *Moody v. Honda of Am. Mfg.*, 2006 U.S. Dist. LEXIS 43092 (S.D. Ohio June 26, 2006). The concerns present in those cases do not exist here. In this case, Northwestern Mutual seeks a SSA file that contains medical records; it does not seek the records directly from Pogue's medical providers. Moreover, as discussed above, Pogue does not appear to contest the relevance of the SSA file or to assert any claim of privilege, whereas both of those factors are often cited as weighing in favor of refusing to order a party to sign a release.

The SSA file may well take on significant weight in Pogue's case, and it is unsurprising that Northwestern Mutual seeks a copy that it can be certain is official and complete.  *See, e.g.*, *Noble v. Ruby Tuesdays Rests., Inc.* 2007 U.S. Dist. LEXIS 78924, *6 (S.D. Ohio Oct. 23, 2007) (requiring plaintiff to execute releases for employment, tax, Social Security, and medical records due to their relevance to his claims, unless he were to "affirmatively and unambiguously disclaim" any related claims).  In short, the Court finds that Northwestern Mutual's request for a signed consent to release is the "most efficient," as well as the most transparent, means of obtaining the SSA file.  *Smith*, 139 F.R.D. at 649; *see also Brown*, 131 F.R.D. at 178 (requiring production of "all medical records pertaining to her complete medical history" *as well as* signed authorizations for release of medical records by all of her health care providers).

Accordingly, the Court finds that Pogue must provide Northwestern Mutual with a fully executed consent to release his SSA file.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Northwestern Mutual's motion to compel (DN 43) is **GRANTED**.  **No later than May 27, 2016**, Pogue shall produce to counsel for Northwestern Mutual a fully executed consent to release form that will permit Northwestern Mutual to obtain a full copy of Pogue's Social Security Disability file.

cc:  Counsel of record

10