**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:14-CV-598-CRS-CHL**

**JAMES H. POGUE,**                                                           **Plaintiff,**

v.

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,**     **Defendant.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion to quash (DN 51) filed by Plaintiff James H. Pogue ("Pogue"). Pogue asks the Court to quash a deposition subpoena served by Defendant The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") on one of Pogue's treating physicians, Dr. Bracken Lewis ("Dr. Lewis"). Northwestern Mutual filed a response in opposition and Pogue filed a reply. (DN 55, 61.) The motion is now ripe for review. For the following reasons, the motion to quash (DN 51) is **denied**.

**BACKGROUND**

This action arises from Northwestern Mutual's denial of a disability insurance claim filed by Pogue. Pogue is a physician who alleges that, due to a number of mental and physical conditions, he is completely disabled from practicing medicine. Dr. Lewis is a physician who has provided treatment to Pogue. Pogue has identified Dr. Lewis as one of two non-retained expert witnesses pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.[1] (*See* DN 51-2 ("Plaintiff's 26(a)(2)(C) Disclosures," served on October 15, 2015).)

---

[1] Rule 26(a)(2)(C) sets forth the scope of information that non-retained expert witnesses must provide: "Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state . . . (i) the subject matter on which the witness is expected to present evidence . . . ; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii); *cf. id.* at (a)(2)(B)(i)-(vi) (setting forth requirements for written reports of witnesses who are "retained or specially employed to provide expert testimony").

Pogue contends that the Court should grant the motion to quash for the following reasons: (1) Northwestern Mutual sought an untimely deposition without leave of court; and (2) the subpoena and notice of deposition were deficient in that Northwestern Mutual failed to include the statutorily required expert witness fee. (*See generally* DN 51.) Pogue further requests that the Court award him attorneys' fees and costs related to the motion to quash; he certifies that he complied with the terms of Rule 37(a)(1) prior to filing the motion to quash.

On September 1, 2015, Northwestern Mutual served on Dr. Lewis a deposition notice for October 5, 2015 (DN 51-3) with an attached subpoena to produce documents. Pogue states that Dr. Lewis mailed responsive documents to Northwestern Mutual, which "then unilaterally cancelled [the] deposition." (DN 51 at 2.) Pogue makes much of the fact that over four months passed between his October 15, 2015 identification of Dr. Lewis as an expert witness and February 25, 2016, the date on which Northwestern Mutual served its notice (DN 51-1) setting a deposition for March 24, 2016.[2] The deposition date set by Northwestern Mutual was nine days after the existing deadline for completion of discovery, March 15, 2016. (*See* DN 41 (extending discovery deadline by 60 days to March 15, 2016).)

Northwestern Mutual filed a lengthy response in opposition (DN 55). It argues as follows: (1) it rescheduled Dr. Lewis's deposition in a good-faith attempt to accommodate Pogue's witness's schedule; (2) Pogue lacks standing to seek to quash a subpoena directed to a nonparty; (3) Northwestern Mutual has complied with its obligations as to payment of Dr. Lewis and will continue to do so after the deposition takes place.

---

[2] Pogue filed the motion to quash on March 18, 2016. On March 23, 2016, the Court entered an order that the deposition not go forward the following day due to the pending motion to quash. (*See* DN 52.) The Court further stated that it would reserve ruling on the motion to quash until after it was fully briefed and ordered that Northwestern Mutual not seek to depose Dr. Lewis until after entry of an order on the motion to quash.

Northwestern Mutual provides the following timeline: On September 1, 2015, it served Dr. Lewis with a documents subpoena (DN 55-1), to which Dr. Lewis responded. On February 11, 2016, Northwestern Mutual served a subpoena directing Dr. Lewis to appear for a deposition on March 10, 2016, attaching a letter stating that the deposition could be moved to another date if Dr. Lewis was unavailable on March 10. (DN 55-3.) Northwestern Mutual was then contacted by a representative of Dr. Lewis's employer who notified it that Dr. Lewis was unavailable on March 10, 2016 and requested a new date. By email of February 15, 2016, Northwestern Mutual's counsel notified Pogue's counsel of this communication from Dr. Lewis and asked whether Pogue would agree to reschedule the deposition for a date subsequent to the existing discovery deadline. (DN 55-4.) Northwestern Mutual represents that Pogue's counsel never responded to that request. On February 18, 2016, Northwestern Mutual's counsel asked Pogue's counsel to confer with Dr. Lewis regarding his availability provide new possible deposition dates. (DN 55-5.) On February 22, 2016, Pogue's counsel replied, stating that Pogue would agree to an extension of the discovery deadline so long as all other pretrial deadlines were also extended. (DN 55-6.) Northwestern Mutual's counsel stated in reply that it was not suggesting a global extension of deadlines, but rather, it simply asked whether Pogue would agree to Dr. Lewis's deposition being rescheduled for a date subsequent to the discovery cut-off. (DN 55-6.) Northwestern Mutual represents that Pogue's counsel did not reply.

Dr. Lewis's employer notified Northwestern Mutual that he was available for deposition on March 24, 2016 at 9:00 a.m. (DN 55-6.) Northwestern Mutual's counsel notified Pogue's counsel of the same. (*Id.*) It then served a subpoena on Dr. Lewis that set the deposition for that date and time. (DN 55-7.) Included with the subpoena were a check for $40.00 for Dr. Lewis's

attendance and a letter setting forth counsel's understanding that Dr. Lewis would send a bill for his hourly charge subsequent to the deposition. (DN 55-7.)

On March 16, 2016, attorney Ronald G. Sheffer notified Northwestern Mutual through its counsel that he represents Dr. Lewis for purposes of this litigation. (DN 55-8.) On behalf of Dr. Lewis, Sheffer acknowledged service of the subpoena and stated that he would provide copies of documents within the scope of the subpoena prior to the deposition. (DN 55-8.)

Pogue filed a reply (DN 61). The reply reiterates Pogue's arguments regarding the untimeliness of the deposition subpoena, arguing that there would have been no need to seek to depose Dr. Lewis after the discovery deadline – and no need for Pogue to file a motion to quash – had Northwestern Mutual sought Dr. Lewis's deposition farther in advance of the deadline. He states that he attempted to work with Northwestern Mutual by suggesting that all relevant deadlines be extended, but Northwestern Mutual insisted on a "take it or leave [it] approach." (DN 61 at 2.) Pogue argues that he *does* have standing to move to quash the subpoena because it infringes upon his legitimate interests in the efficient progression of this litigation and protection from violation of a scheduling order.

## DISCUSSION

**1. Standing to Challenge Subpoena**

The Federal Rules of Civil Procedure do not set forth a rule as to who has standing to challenge a subpoena issued to a nonparty pursuant to Rule 45. However, district courts within the Sixth Circuit routinely hold that parties to a lawsuit lack standing to challenge a subpoena served on a nonparty. In a case commonly cited for this proposition, *Donahoo v. Ohio Department of Youth Services*, 211 F.R.D. 303, 306 (N.D. Ohio 2002), the Northern District of

Ohio denied the defendant's motion to quash subpoenas served on three nonparty witnesses, despite having found that the subpoenas failed to allow the nonparties sufficient time for compliance. The court stated as follows:

> The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty. *See Clayton Brokerage Co., Inc. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D.C. Md. 1980) (citation omitted [in original]). *The party to whom the subpoena is directed is the only party with standing to oppose it. See U.S. v. Tomison*, 969 F. Supp. 587, 591-92 (E.D. Cal. 1997) (emphasis added).

*Donahoo*, 211 F.R.D. at 306.[3] Other district courts applying the *Donahoo* rule have found it unnecessary to look to the merits of the motion to quash. *See, e.g.*, *Riding Films, Inc. v. Doe*, 2013 U.S. Dist. LEXIS 92049, at *18 (S.D. Ohio July 1, 2013) ("[O]nly the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden") (citation omitted); *id.* at *19 ("[The nonparty] has not moved to quash the subpoena, nor has it even suggested that responding to the subpoena will impose an undue burden on it."); *J.B. Hunt Transp., Inc. v. Adams*, 2007 U.S. Dist. LEXIS 17577, at *8 (E.D. Mich. March 14, 2007) ("Without addressing the merits of J.B. Hunt's arguments, the court finds that J.B. Hunt lacks standing to move to quash the [] subpoenas. [The nonparty recipient] itself has not objected to the subpoenas or moved to quash them.").

In this case, Dr. Lewis has not challenged the subpoena. Indeed, his office and his counsel have both worked in good faith with Northwestern Mutual's counsel to reschedule his

---

[3] The Sixth Circuit has indicated, in dicta, that it concurs with this standard. *See Mann v. Univ. of Cincinnati*, 1997 U.S. App. LEXIS 12482, at *13-14 (6th Cir. May 27, 1997) ("We need not decide today exactly how Rule 45 applies in every hypothetical case, because in this case it cannot be disputed that the University and defendants' attorney knew that plaintiff wished to assert a privilege over her medical records, and therefore should have known that she had standing to challenge the subpoena, regardless of her ultimate success."); *see id.* at *14 (citing 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995) (stating that "ordinarily a person has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought")).

deposition. Additionally, Pogue does not assert a claim of privilege. Indeed, he has placed his disability status – and consequently, his medical conditions – at issue in this lawsuit, and therefore, would be hard-pressed to argue that his medical records or other information related to him that is maintained by Dr. Lewis is privileged. *See, e.g.*, *Bertrand v. Yellow Transp., Inc.*, 2010 U.S. Dist. LEXIS 52778, *4 (M.D. Tenn. May 28, 2010) (finding that plaintiff put his physical and emotional conditions at issue by, among other things, alleging that he suffered serious health concerns and seeking damages for pain and suffering and emotional distress).

Pogue argues that he has standing to challenge the subpoena served on Dr. Lewis because it infringes upon his legitimate interests. (*See* DN 61 at 5-8.) Specifically, he contends that he has an interest in the litigation proceeding in accordance with the existing scheduling order, and that Northwestern Mutual compromised this interest when it set Dr. Lewis's deposition for a date after the existing discovery deadline. Pogue further argues that Dr. Lewis's apparent lack of objection to the subpoena is meaningless because only the Court has the ability to amend the existing scheduling order.

Pogue's arguments are unavailing. He relies upon case law that is neither binding on this Court nor persuasive. Even if the "legitimate interest" standard proposed by Pogue were applicable in this case, the Court finds that it would be unmet. It is true that Pogue has an interest in this case proceeding efficiently; indeed, the Court and both parties share in that interest. However, under the circumstances, the Court finds that Pogue suffered no harm based on the date proposed by Northwestern Mutual for Dr. Lewis's deposition. Northwestern Mutual sought to depose Dr. Lewis on March 10, 2016, five days before the discovery cutoff. While cutting it close to the deadline, this choice of dates was appropriate.

Critically, it was *only in an attempt to accommodate Pogue's witness* that Northwestern Mutual later sought to move the deposition to March 24, 2016, which was nine days after the existing discovery cut-off. Furthermore, Northwestern Mutual's counsel sought Pogue's counsel's agreement to this accommodation, which would have required a short extension of the discovery deadline for a single purpose. Despite the purpose of that request being to accommodate his own witness, Pogue refused to agree unless Northwestern Mutual would agree to extend all case management deadlines. Not only would the global extension proposed by Pogue have been a dramatic step beyond the minimal extension sought by Northwestern Mutual, but the fact that Pogue proposed it undermines his argument that a mere nine-day extension for Dr. Lewis's deposition would have harmed the efficient progression of this litigation. Moreover, Pogue's repeated claim that Northwestern Mutual sought to "unilaterally" alter the discovery deadline is belied by both Northwestern Mutual's counsel's efforts to get Pogue's agreement to the extension *and* his own counsel's attempt to form an agreement to extend all case management deadlines.

Finally, it is worth noting that some courts have found that parties have standing to challenge nonparty subpoenas when such challenges are brought pursuant to Rule 26 of the Federal Rules of Civil Procedure, as opposed to Rule 45. *See, e.g.*, *Shweinfurth v. Motorola, Inc.*, 2008 U.S. Dist. LEXIS 97069, *4-6 (N.D. Ohio Nov. 19, 2008) (finding that even when a party lacks standing under Rule 45, it may have standing when seeking to contest a nonparty subpoena through a motion for protective order pursuant to Rule 26(c)). In this case, it is clear from Pogue's motion and reply that he seeks an order quashing the subpoena of Dr. Lewis pursuant to Rule 45; he does not seek a protective order under Rule 26(c).

To summarize, the prevailing rule among district courts of the Sixth Circuit is that, absent a claim of privilege, a party does not have standing to contest a subpoena issued to a nonparty. *Donahoo*, 211 F.R.D. at 306. As is set forth above, Pogue lacks standing to challenge the subpoena under this standard. Even if the Court were to apply the "legitimate interests" standard proposed by Pogue, his motion to quash fails to satisfy that standard. Rule 26 also does not provide him with any relief. Accordingly, based on the foregoing, the Court finds that Pogue lacks standing to challenge the subpoena of Dr. Lewis.

### 2. Other Issues Raised by the Motion to Quash

Having found that Pogue lacks standing to challenge the subpoena, the Court need not examine the merits of the motion to quash. However, it should be clear from the above discussion that Pogue's motion would also fail on the merits. Good cause existed to take Dr. Lewis's deposition nine days after the close of discovery. A nine-day delay in the discovery process is hardly noteworthy in a case that has been plagued with discovery disputes and has already seen multiple amendments to the scheduling orders imposed by the Court. Moreover, Northwestern Mutual was merely trying to accommodate Pogue's witness, and it sought (in vain) Pogue's counsel's agreement to this short-term exception to the existing deadline.

Additionally, it is prudent for the Court to address at this time Pogue's argument that Northwestern Mutual failed to properly compensate Dr. Lewis for his deposition. Northwestern Mutual attached to its subpoena of Dr. Lewis a check in the amount of $40. (DN 55-7 at 9.) The Court finds that with this action, Northwestern Mutual complied with its obligations as to payment of Dr. Lewis prior to the deposition. *See* Fed. R. Civ. P. 45(b)(1) ("[ . . . ] Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that

person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law [ . . . ]"); *see* 28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."). Northwestern Mutual reasonably anticipated that the deposition of Dr. Lewis, a non-retained expert and treating physician, would be completed in one day, so a one-day fee of $40 was sufficient. Because it noticed the deposition to be taken at Dr. Lewis's place of work, Northwestern Mutual was not obligated to pay any additional fees related to mileage and travel time. (*See generally* DN 55-7.)

Pogue's argument that Northwestern Mutual's subpoena is invalid due to its not having paid Dr. Lewis his hourly rate in advance of the deposition is both illogical and an inaccurate statement of the law. First, as is addressed in more detail below, it is entirely reasonable for Northwestern Mutual to pay Dr. Lewis his hourly rate *after* the deposition, when both the deponent and the deposing party will be aware of the actual length of the deposition. Second, Northwestern Mutual had no way of knowing Dr. Lewis's hourly rate at the time it served the subpoena. Third, and most troublingly, in an attempt to bolster his argument, Pogue misleadingly quotes precedent from this district. Specifically, he omits an explicit reference to the appearance fee of $40 per day from a quote regarding the deposing party's obligation, in an apparent attempt to suggest that the deponent's hourly rate must be paid in advance. *Compare Hazelwood v. Webb*, 2007 U.S. Dist. LEXIS 71778, *6 (W.D. Ky. Sept. 25, 2007) ("This Rule requires the simultaneous tendering of the witness fee ($40), as well as the estimated mileage expenses, with the service of the subpoena.") (citation omitted) *and* DN 61 at 8 ("This rule

9

'requires the *simultaneous* tendering of the witness fee [], as well as the estimated mileage expenses, with service of a subpoena.'") (quoting *Hazelwood*, *supra*) (emphasis and brackets as they appear in DN 61). *Hazlewood* clearly states that the fee that must be tendered with a non-party subpoena is the "($40)" witness fee. Pogue's decision to elide the specific reference to "($40)"—and nothing else—from his quote of *Hazelwood* serves no conceivable purpose other than to attempt to mislead the reader, i.e., the Court, about the holding of *Hazelwood*.

In addition to the fees discussed above, a party seeking to depose an opponent's expert witness is responsible for paying him or her a "reasonable fee." *See* Fed. R. Civ. P. 26(b)(4)(E) ("Unless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D) . . . ."). Northwestern Mutual clearly communicated to Dr. Lewis (through a representative of his employer) that it would compensate him at his hourly rate following the completion of the deposition. (*See* DN 55-7 at 3 ("A check for the witness fee is enclosed, but I understand that Dr. Lewis will send me a bill for his hourly charges once the deposition is completed.").) This proposed arrangement is plainly reasonable given that at the time the subpoena was served, no one could have known how long the deposition would last. The Court finds that it is proper for Northwestern Mutual to compensate Dr. Lewis at his hourly rate following the completion of his deposition and that its plan for compensating Dr. Lewis is consistent with its obligations pursuant to the Federal Rules of Civil Procedure.

Finally, the Court need not devote significant attention to Pogue's request for attorneys' fees and costs in relation to the motion to quash. It should be clear from the instant memorandum opinion and order that the Court has wholly rejected Pogue's motion to quash.

The Court further finds that, notwithstanding the Rule 37 certification included in the motion to quash (*see* DN 51 at 2), Pogue's counsel *did not* make a good-faith effort to resolve this dispute extra-judicially. Accordingly, Pogue's request for attorneys' fees and costs incurred in relation to the motion to quash is denied.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Pogue's motion to quash the deposition of Dr. Bracken Lewis (DN 51) is **DENIED**.

IT IS FURTHER ORDERED that Northwestern Mutual shall not set a new date for the deposition of Dr. Lewis until after the Court has entered an amended scheduling order. At such time, Northwestern Mutual may set a new date for his deposition, either by subpoena or by informal agreement with Dr. Lewis.

Finally, IT IS HEREBY ORDERED that neither party shall file any discovery-related motion without first requesting and participating in a telephonic conference with the Court. Either party may request such a conference by contacting Case Manager Theresa Burch at theresa_burch@kywd.uscourts.gov.

cc:  Counsel of record