UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:14-CV-598-CRS-CHL

JAMES H. POGUE,                                                                    Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,          Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on three motions related to Dr. Roy Asta ("Asta"), a treating physician identified as an expert witness by Plaintiff James H. Pogue ("Pogue").  Pogue has filed a motion to quash (DN 48) a deposition subpoena served by Defendant The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") on Asta.  Northwestern Mutual filed a motion to exclude the testimony of Asta (DN 54) and a motion for leave to file a sur-reply in relation to the motion to quash (DN 60).  All three motions are fully briefed and ripe for review.  For the following reasons, the motion to quash (DN 48) is **denied**; the motion to exclude (DN 54) is **granted in part** and **denied in part**; and the motion for leave to file a sur-reply (DN 60) is **granted**.

**BACKGROUND**

This action arises from Northwestern Mutual's denial of a disability insurance claim filed by Pogue.  Pogue is a physician who alleges that, due to a number of mental and physical conditions, he is completely disabled from practicing medicine.  The three motions that are addressed in the instant memorandum opinion and order are all related to Asta and involve the same background circumstances.  Asta is a physician who has provided treatment to Pogue.  Pogue has identified Asta as one of two non-retained expert witnesses pursuant to Rule

26(a)(2)(C) of the Federal Rules of Civil Procedure.[1]  (*See* DN 51-2 ("Plaintiff's 26(a)(2)(C) Disclosures," served on October 15, 2015).)

On January 8, 2016, Northwestern Mutual served a notice of its intention to take Asta's deposition at his place of business on February 17, 2016.  (DN 48-2.)  Attached to the deposition notice was a subpoena pursuant to Rule 45 commanding Asta to produce "[a]ny and all medical records, correspondence, or other documents related to [Pogue]."  (*Id.* at 3.)  The deposition went forward as scheduled on February 17, 2016 at 10:00 a.m. and proceeded for some five hours. The deposition was halted at approximately 3:00 p.m. due to a work obligation that required Asta's attention.  On February 25, 2016, Northwestern Mutual served a "Notice of Continuation of Deposition" to occur at Asta's place of business on March 10, 2016.  (DN 48-1.)  The deposition notice referenced the previously-issued subpoena and stated that Asta must produce any documents within its scope.  (*Id.*)

On March 8, 2016, two days prior to the scheduled resumption of the deposition, Pogue filed the motion to quash (DN 48).  On March 9, 2016, the Court entered an order (DN 49) that the deposition not go forward on the following day due to the pending motion to quash.  The Court further stated that it would reserve ruling on the motion to quash until after it was fully briefed and ordered that Northwestern Mutual not seek to depose Asta until after entry of an order on the motion to quash.

---

[1]     Rule 26(a)(2)(C) sets forth the scope of information that non-retained expert witnesses must provide: "Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state . . . (i) the subject matter on which the witness is expected to present evidence . . . ; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii); *cf. id.* at (a)(2)(B)(i)-(vi) (setting forth requirements for written reports of witnesses who are "retained or specially employed to provide expert testimony").

2

### 1. Motion to Quash

The basis for Pogue's motion to quash (DN 48) is that Northwestern Mutual seeks to resume the deposition of Asta in violation of the seven-hour time limit for depositions imposed by Rule 30 of the Federal Rules of Civil Procedure and without regard for Asta's purported promise to continue the deposition later on the day on which it began.  Additionally, he argues that Northwestern Mutual failed to compensate Asta for his time, also in violation of the Rules.

Pogue states that on February 17, 2016, Northwestern Mutual deposed Asta for over five "exhausting" hours, at which point Asta "was forced to call a temporary break."  (DN 48 at 2.) He represents that Asta informed Northwestern Mutual's counsel that he would return shortly to answer any further questions.  Instead, Pogue states, Northwestern Mutual's counsel refused to resume the deposition later that day and "summarily state[d] that the deposition would be continued."  (*Id.*)  Pogue argues that Northwestern Mutual failed to use its time wisely, insisting that Asta review certain documents that he produced prior to the deposition, and that Pogue and Asta should not be required to resume the deposition based on Northwestern Mutual's handling of the deposition.  Pogue states that expert depositions "customarily" last two hours or less and that Northwestern Mutual has already far exceeded this time frame.

Pogue contends that, pursuant to Rule 30(d) of the Federal Rules of Civil Procedure, Northwestern Mutual was required to seek leave of Court prior to noticing a second date to depose Asta, as it now proposes to conduct a deposition that would exceed seven hours in length. He further argues that Northwestern Mutual failed to compensate Asta as required by the Rules because it provided him with a daily witness fee of $40 but did not compensate him at his hourly rate for his participation in the deposition.  Additionally, Pogue argues that a continuation of the

deposition would be unnecessarily duplicative and would impose an undue burden on Asta and on Pogue. Finally, Pogue's motion includes a certification pursuant to Local Rule 37.1 that his counsel made a good-faith attempt to resolve this dispute with opposing counsel prior to filing the motion to quash.

Northwestern Mutual filed a lengthy response in opposition (DN 53). It argues that in the course of Asta's deposition, he informed counsel for Northwestern Mutual that he had a conflict that would require him to leave the deposition at 3:00 p.m., and that at no time did he state that the conflict was brief or that he would be able to resume the deposition later that day. Quite the opposite, it states that Asta offered twice, on the record, to return on a later date to complete his deposition. In response to Pogue's argument that it wasted time going over documents during the deposition, Northwestern Mutual argues that it was a necessary use of time because it appeared at the start of the deposition that Asta had in his possession significantly more documents than he had previously produced to Northwestern Mutual. It argues that, as an accommodation to Asta, Pogue's witness, it agreed to adjourn the deposition that day and to resume at a later date. Attached to the response are excerpts from the deposition transcript.

Northwestern Mutual further represents that on the day after the initial deposition, its counsel contacted Pogue's counsel regarding dates for the completion of the deposition. (*See* DN 53-6.) It represents that Pogue's counsel never responded to that request or to a later request for the same information. Accordingly, Northwestern Mutual states, its counsel served a notice for completion of the deposition on March 10, 2016. It states that it did not receive any notification from Pogue as to his opposition to that deposition notice until March 8, 2016, when Pogue filed the motion to quash. Northwestern Mutual states that its counsel contacted Pogue's

4

counsel, by email, informing him that it intended to go forward with the deposition notwithstanding the motion to quash and that it disputed Pogue's account of the circumstances surrounding the deposition.  (DN 53-6.)  Pogue's counsel responded, in pertinent part, "Proceed at your own peril but we will not be attending nor will Asta."  (*Id.* at 2.)

Northwestern Mutual contends that the motion to quash is rife with misrepresentations as to fact and law.  Its objections to Pogue's description of the facts are set forth above.  As to the law, Northwestern Mutual argues that Pogue failed to meet his burden of proof that Asta would have completed the deposition on the original date, specifically noting that Pogue's motion does not include any citations to the deposition transcript.  It further contends that Pogue's statements that an expert deposition typically lasts only two hours, and that five hours was sufficient to complete the deposition of Asta, are immaterial given that Rule 30(d)(1) allows for seven hours, and the advisory notes thereto state that more time may be needed for expert depositions. Moreover, Northwestern Mutual argues, Pogue lacks standing to move to quash a subpoena directed to Asta, a nonparty, or to otherwise undo Asta's stipulation on the date of the deposition that it could continue at a later date.  Additionally, Northwestern Mutual asserts that it complied with its obligations with respect to payment of Asta by advancing him a fee of $40 for his participation in the deposition, as well as communicating its intention to compensate him at his hourly rate for his actual time devoted to the deposition.

Pogue filed a reply (DN 57) in support of his motion to quash.  He, like Northwestern Mutual, contends that his opponent misstates both fact and law.  With respect to Northwestern Mutual's requirement that Asta examine certain documents, he contends that it failed to raise any objections to or concerns about the documents that Asta produced until after the deposition

convened, leading to a "harassing and unfounded two hour harangue of Asta[.]"  (DN 57 at 2.)
Had Northwestern Mutual better managed its time, Pogue argues, it could have concluded the
deposition on March 10, 2016.

Attached to the reply is a declaration signed by Asta and dated March 9, 2016 (DN 57-1).
The declaration provides that Asta "blocked out a reasonable time for the deposition, but was
unable to avoid a prior commitment," and appeared for the deposition as directed by subpoena.
(*Id.* at ¶¶ 5-6.)  Asta avers that after some five hours of testifying, he "required a break to briefly
attend to a prior commitment," and that he "informed Defendant's counsel [that he] was willing
to return shortly thereafter to complete the deposition," but that "Defendant's counsel refused to
continue the deposition that same day and instead demanded the deposition be continued on a
subsequent day."  (*Id.* at ¶¶ 8-10.)  Asta states that Pogue's counsel objected to a continuance,
and that Northwestern Mutual was the only party not willing to complete the deposition on that
date.  With respect to payment, Asta states that the subpoena served by Northwestern Mutual
"did not contain advance payment for [his] deposition," that he "agreed to proceed with the
assurance [that] payment would be promptly provided and advised Defendant's counsel [that his]
hourly rate was $175 for testifying," and that as of the date of his declaration, he had yet to be
compensated by Northwestern Mutual.  (*Id.* at ¶¶ 4, 7.)

Pogue argues that he has standing to contest the subpoena for a continuation of the
deposition because he has a legitimate interest in "protecting the administration of the legal
proceeding," as well as in protecting Asta, who is "not a legal professional and [] not familiar
with his rights under the Federal Rules of Civil Procedure."  (DN 57 at 405.)

### 2. Motion for Leave to File Sur-Reply

Northwestern Mutual filed a motion for leave to file a sur-reply (DN 60) in opposition to the motion to quash. It argues that it should be permitted to file a sur-reply because Pogue submitted purported new evidence, Asta's declaration, in conjunction with his reply. It contends that the affidavit is tardy in that Pogue asserted the same arguments in his motion to quash and in the reply, and yet, he only filed the declaration upon filing his reply.

Northwestern Mutual filed a proposed sur-reply (DN 60-1) with its motion. In the proposed sur-reply, Northwestern Mutual argues that Asta's declaration must be disregarded because it directly contradicts his deposition testimony. It avers that Pogue relies entirely on Asta's declaration to support his version of events and that Pogue never cites to the deposition transcript. Northwestern Mutual denies that its counsel was ever told at the time of the deposition that Asta's other commitment would take only a short time and that he would be available to resume the deposition later in the day.

Pogue filed a response (DN 66) in opposition to the motion for leave to file a sur-reply. He argues that Northwestern Mutual should not be permitted to file a sur-reply because it merely raises the same arguments as it did in its response to the motion to quash. He argues that the reply simply added to the record, and that submission of Asta's declaration was necessary due to Northwestern Mutual's "blatant efforts to cast Dr. Pogue in a negative light and to not share with the Court the discussions the parties had off the record" on the date of the deposition. (DN 66 at 2.) Pogue argues that it is improper to focus solely on the deposition transcript as a record of what transpired that day. He contends that Northwestern Mutual cannot dispute and has not disputed that the parties and Asta had discussions off the record on the date of the deposition.

7

Northwestern Mutual filed a reply in support of its motion for leave to file a sur-reply (DN 67).  It specifically disputes Pogue's contention regarding discussions off the record on the date of the deposition.  (DN 67 at 1 ("Northwestern Mutual has repeatedly denied such discussions both in its filings with the Court and with written communications with Plaintiff's counsel.").)  Northwestern Mutual maintains its position that neither Asta nor Pogue's counsel indicated that the deposition could be completed on the same day, and points to Asta's agreement on the record to continue the deposition at a later date.  Moreover, it argues that Pogue's counsel's only objection on the record regarding the length of the deposition was that "[f]ive hours is more than adequate."  (*Id.* at 2 (citing DN 53-5 at 268).)  Northwestern Mutual asserts that its sur-reply is necessary due to Pogue's attempt to rewrite Asta's testimony by filing a post-deposition declaration.

### 3.   Motion to Exclude Asta's Testimony

In addition to the motion to quash and the motion for leave to file a sur-reply in relation thereto, there is a third pending motion that relates to Asta: Northwestern Mutual's motion to exclude Asta's testimony, in full, in this case (DN 54).  In support of the motion to exclude, Northwestern Mutual relies in large part upon the same factual and legal arguments it made in response to Pogue's motion to quash.  In short, Northwestern Mutual argues that Pogue and his counsel "engaged in gamesmanship and abuse of the discovery process" by advising Asta to disobey a properly issued subpoena and filing a motion to quash without standing or adequate factual foundation.  (DN 54 at 2.)  Northwestern Mutual again asserts its argument that Pogue lacks standing to "meddle" in Asta's response to the subpoena or to file a motion to quash.  (*Id.*

at 4.)  It argues that Pogue's only possible motive in doing so was to undermine the discovery process.

Further, Northwestern Mutual argues that Pogue's motion to quash relies upon repeated factual misrepresentations with respect to the completion of Asta's deposition.  (*See id.* at 5 (arguing that Pogue states at least seven times in his motion to quash, without citation to the record or other viable proof, that Asta indicated he required a short break and would be happy to return to complete the deposition).)   Additionally, Northwestern Mutual argues that Pogue deliberately misstates the law as to its obligations to compensate expert witnesses.  (*See id.* at 8-10.)

Pogue filed a lengthy response in opposition (DN 59).  He argues that the motion to exclude is merely an attempt by Northwestern Mutual to have the last word on the motion to quash, that it fails to set forth the applicable legal standard for excluding expert witness testimony, and that, as it is wholly without merit, he should be awarded attorneys' fees and costs expended in responding to the motion to exclude.  Pogue again criticizes Northwestern Mutual for forcing Asta to review the documents that he produced, arguing that Northwestern Mutual did not object to the document production prior to the deposition and that it knew or should have known that the documents were actually produced by Northwestern Mutual as part of discovery in this action.  Pogue argues that Northwestern Mutual failed to certify pursuant to Rule 37.1 that it made a good-faith attempt to resolve the dispute prior to filing the motion to exclude.  The remainder of the response is a restatement of Pogue's arguments in support of his motion to quash.

In keeping with the pattern in this case, Northwestern Mutual then filed an extensive reply (DN 64).  It characterizes Pogue's response as part of his "ongoing abuse of discovery and the judicial process."  (*Id.* at 1.)  In response to Pogue's argument regarding a failure to include a Rule 37 certification, Northwestern Mutual points to its motion to exclude Asta, which it represents contains a detailed certification, and notes that Pogue looks only to its memorandum of law in support of the motion to exclude.  (*Id.* at 2-3 (citing DN 54 at 2-3).)  Northwestern Mutual disputes Pogue's representations regarding Asta's document production in response to the subpoena.  Northwestern Mutual states that prior to the deposition, Asta produced approximately 80 pages of material, but at the time of the deposition, he brought with him nearly 240 pages of material.  (*Id.* at 10.)  It states that among those documents were records that it had never before seen, including some handwritten notes generated by Asta, treatment notes, correspondence between Pogue's counsel and Asta, and correspondence between Pogue and his student loan servicer.  (*Id.* at 10-11.)  Moreover, it argues, even assuming that some of the documents that Asta brought to the deposition *were* produced by Northwestern Mutual or other sources, it does not follow that Asta's failure to comply in full with the subpoena is excusable.  It contends that it has a substantial interest in learning what documents Asta possessed, prior to deposing him, as that relates to the extent of his knowledge regarding Pogue's claims and his medical treatment.

Finally, Northwestern Mutual argues that the Court's order (DN 49) suspending the deposition as scheduled pending a ruling on the motion to quash "did not excuse the Plaintiff's [] abusive conduct."  (DN 64 at 13.)  Northwestern Mutual's argument in support of the significant

sanction of excluding Asta's testimony can be summarized with the following excerpt from its reply:

> The Court relies on litigants and lawyers to provide accurate information to aid in the exercise of judicial power.  When parties, like Plaintiff, engage in deception and gamesmanship, the judicial process as a whole suffers.  The conduct of Plaintiff and his counsel brought the progress of this case to a grinding halt and snowballed into a regrettably large discovery dispute.  A discovery sanction is appropriate to punish such behavior.

(*Id.*)

## DISCUSSION

The Court will address each of the three motions described above.  As should be clear from the above discussion, the motions involve a significant overlap of both factual and legal issues.

### 1.  Motion to Quash

#### a.  Standing

The Federal Rules of Civil Procedure do not set forth a rule as to who has standing to challenge a subpoena issued to a nonparty pursuant to Rule 45.  However, district courts within the Sixth Circuit routinely hold that parties to a lawsuit lack standing to challenge a subpoena served on a nonparty.  In a case commonly cited for this proposition, *Donahoo v. Ohio Department of Youth Services*, 211 F.R.D. 303, 306 (N.D. Ohio 2002), the Northern District of Ohio denied the defendant's motion to quash subpoenas served on three nonparty witnesses, despite having found that the subpoenas failed to allow the nonparties sufficient time for compliance.  The court stated as follows:

> The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty.  *See Clayton*

11

> *Brokerage Co., Inc. of St. Louis v. Clement*, 87 F.R.D. 569, 571
> (D.C. Md. 1980) (citation omitted [in original]).  *The party to
> whom the subpoena is directed is the only party with standing to
> oppose it.  See U.S. v. Tomison*, 969 F. Supp. 587, 591-92 (E.D.
> Cal. 1997).

*Donahoo*, 211 F.R.D. at 306 (emphasis added).[2]  Other district courts applying *Donahoo* have

found it unnecessary to look to the merits of the motion to quash at issue.  *See, e.g.*, *J.B. Hunt

Transp., Inc. v. Adams*, 2007 U.S. Dist. LEXIS 17577, *8 (E.D. Mich. March 14, 2007)

("Without addressing the merits of J.B. Hunt's arguments, the court finds that J.B. Hunt lacks

standing to move to quash the Gambro subpoenas.  Gambro itself has not objected to the

subpoenas or moved to quash them.").  This Court very recently applied the *Donahoo* rule in this

case, denying a motion to quash filed by Pogue in relation to a subpoena of his other treating

physician/expert witness, Dr. Bracken Lewis.  (*See* DN 69.)

    The motion to quash that is now before the Court is more complicated.  The first two

aspects of the *Donahoo* rule are met.  First, the motion was filed by a party, Pogue, in relation to

a subpoena of a nonparty, Asta.  Second, as Pogue appears to concede, he has not asserted a

claim of privilege in relation to the subpoena of Asta.  Indeed, Pogue has placed his disability

status – and, consequently, his medical condition – at issue in this lawsuit, and therefore, he

would be hard-pressed to argue that his medical records or other information related to him that

is maintained by Asta is privileged.  *See, e.g.*, *Bertrand v. Yellow Transp., Inc.*, 2010 U.S. Dist.

LEXIS 52778, *4 (M.D. Tenn. May 28, 2010) (finding that plaintiff put his physical and

---

[2]    The Sixth Circuit has indicated in dicta that it would apply the same standard if faced with the issue.  *See Mann v. Univ. of Cincinnati*, 1997 U.S. App. LEXIS 12482, at *13-14 (6th Cir. May 27, 1997) ("We need not decide today exactly how Rule 45 applies in every hypothetical case, because in this case it cannot be disputed that the University and defendants' attorney knew that plaintiff wished to assert a privilege over her medical records, and therefore should have known that she had standing to challenge the subpoena, regardless of her ultimate success."); *see id.* at *14 (citing 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995) (noting that "ordinarily a person has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought")).

emotional conditions at issue by, among other things, alleging that he suffered serious health concerns and seeking damages for pain and suffering and emotional distress).

Nonetheless, under the circumstances of this case, the final portion of the *Donahoo* standard gives the Court pause. The standard provides that "[t]he party to whom the subpoena is directed is the only party with standing to oppose it." *Donahoo*, 211 F.R.D. at 306. Asta executed a sworn declaration that supports Pogue's motion to quash. It is evident from the face of the declaration that Asta intended it to be filed in conjunction with this action, as the heading of the declaration sets forth the case caption. (*See* DN 57-1 at 1.)

Accordingly, the Court finds that Asta objects to the subpoena, though he does so by unorthodox means, that is, by filing a sworn declaration in support of a party's motion to quash rather than filing his own motion. In this way, this case is distinct from cases in which district courts in our circuit customarily justify findings of lack of standing. *See, e.g.*, *Riding Films, Inc. v. Doe*, 2013 U.S. Dist. LEXIS 92049, at *18 (S.D. Ohio July 1, 2013) ("[Only the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden") (citation omitted); *id.* at *19 ("[The nonparty] has not moved to quash the subpoena, *nor has it even suggested that responding to the subpoena will impose an undue burden on it*.") (emphasis added); *Griffiths v. Ohio Farmers Ins. Co.*, 2010 U.S. Dist. LEXIS 64257, at *5 (N.D. Ohio June 29, 2010) (noting that the nonparty "has not objected to the subpoena nor moved to quash it and he is the only party with standing to oppose it") (citation omitted); *J.B. Hunt Transp., Inc. v. Adams*, 2007 U.S. Dist. LEXIS 17577, at *8 (E.D. Mich. March 14, 2007) ("Without addressing the merits of J.B. Hunt's arguments, the court finds that J.B. Hunt lacks

13

standing to move to quash the [] subpoenas. [The recipient] itself has not objected to the subpoenas or moved to quash them.").

Based on the foregoing, the Court finds that Asta objects to the second subpoena served on him by Northwestern Mutual. He asserted his objection through the reply in support of Pogue's motion to quash. To deny Pogue's motion to quash for lack of standing and require Asta to file his own motion to quash would be needlessly duplicative and would only serve to exacerbate the series of delays caused by numerous discovery disputes in this case.[3] For these reasons, *under the particular circumstances surrounding this motion to quash* (DN 48), the Court concludes that the *Donahoo* case and its progeny do not compel a finding that the motion to quash be denied for lack of standing.

### b. Continuation of Asta's Deposition

Having concluded that Asta has objected to the second subpoena issued by Northwestern Mutual and that the motion to quash need not be denied for lack of standing, the Court moves on to address the merits of the motion. *See Griffiths*, 2010 U.S. Dist. LEXIS 64257, at *2 (After "inquir[ing] into the threshold issue of standing, [a court looks to] the merits of a [] challenge to a subpoena."). Pursuant to Rule 45 of the Federal Rules of Civil Procedure, "[a] court *must* quash a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles; (iii) requires disclosure of privileged or other protected matter; or (iv) subjects a person to undue burden." *Id.* (citing Fed.

---

[3]     Moreover, the ultimate result herein is to deny the motion to quash on the merits. The result would be the same regardless of whether the movant were Pogue or Dr. Asta.

R. Civ. P. 45([d])(3)(A)(i)-(iv))[4] (emphasis added). "The party issuing a subpoena must take reasonable steps to avoid issuing an undue burden on a person subject to the subpoena, *id.* at ([d])(1), but '[t]he movant bears the burden of establishing that the issued subpoenas violate Rule 45[.]'" *Id.* (quoting *Recycled Paper Greetings, Inc. v. Davis*, 2008 U.S. Dist. LEXIS 10649, at *3 (N.D. Ohio Feb. 13, 2008)).

In this case, Pogue – and through him, Asta – asserts that compliance with Northwestern Mutual's subpoena to continue the deposition of Asta on March 10, 2016 (DN 53-7) would impose an undue burden in violation of Rule 45(d)(3)(A)(iv). (*See, e.g.*, DN 48 at 7 ("This question goes hand in hand with Fed. R. Civ. P. 45(d)(3)(A), whereby *a court is required to quash* a subpoena where it 'subjects a person to undue burden.'").) Specifically, Pogue argues that continuation of the deposition would be burdensome to Asta and unreasonably duplicative, as well as in violation of Rule 30(d)(1)'s limit on the duration of depositions. *See* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours."). Pogue contends that Northwestern Mutual seeks a "second deposition" of Asta wholly due to its own failings, in that Northwestern Mutual: (1) insisted upon a two-hour series of "irrelevant and harassing" questions, thereby mismanaging its allotted time for completion of the deposition; and (2) refused to resume the deposition later in the day. Pogue argues that to require Asta to take time away from his practice and hospital obligations in order to be deposed on a second day would be an enormous burden. He further argues that to permit the deposition to go forward would burden him and his counsel by requiring them to expend time and costs

---

[4]     The *Griffiths* court cited a version of Rule 45 then in effect in which quashing or modifying a subpoena was addressed in subsection (c)(3). In 2013, Rule 45 was amended and "[s]ubdivision (d) [now] contains the provisions formerly in subdivision (c)." Fed. R. Civ. P. 45 advisory committee's note (2013).

associated with travel to Asta's offices in Madison, Tennessee for a second time and taking part in another deposition.

For the reasons set forth below, the Court rejects Pogue's arguments and finds that he has not established that the Court is compelled to quash the deposition subpoena pursuant to Rule 45(d)(3)(A)(iv). First, Pogue's argument that the second subpoena should be quashed because Northwestern Mutual mismanaged its time on Asta's original deposition date is a red herring. While Rule 30(d)(1) does anticipate that depositions shall be limited to no more than one day of seven hours, the Rules further provide that that limitation is open to change by the Court – *or by the parties or the deponent*. Rule 30(d)(1) itself states, "The court *must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.*" Fed. R. Civ. P. 30(d)(1) (emphasis added); *see* Fed. R. Civ. P. 26(b)(2)(A) ("By order, the court may alter the limits in these rules on . . . the length of depositions under Rule 30.").

The advisory notes to Rule 30 set forth "a variety of factors" that might be relevant to "[p]arties considering extending the time for a deposition – and courts asked to order an extension[.]" Fed. R. Civ. P. 30 advisory committee's note (2000). The following excerpt from the advisory notes illustrates that a number of factors may be relevant to a court's analysis, including several factors that are relevant in this case:

> For example, if the witness needs an interpreter, that may prolong the examination. If the examination will cover events occurring over a long period of time, that may justify allowing additional time. In cases in which the witness will be questioned about numerous or lengthy documents, it is often desirable for the interrogating party to send copies of the documents to the witness sufficiently in advance of the deposition so that the witness can become familiar with them. *Should the witness nevertheless not*

16

> *read the documents in advance, thereby prolonging the deposition,*
> *a court could consider that a reason for extending the time limit.  If*
> *the examination reveals that documents have been requested but*
> *not produced, that may justify further examination once production*
> *has occurred.* In multi-party cases, the need for each party to
> examine the witness may warrant additional time, although
> duplicative questioning should be avoided and parties with similar
> interests should strive to designate one lawyer to question about
> areas of common interest. Similarly, should the lawyer for the
> witness want to examine the witness, that may require additional
> time. *Finally, with regard to expert witnesses, there may more*
> *often be a need for additional time—even after the submission of*
> *the report required by Rule 26(a)(2)—for full exploration of the*
> *theories upon which the witness relies.*

*Id.* (emphases added).  Asta conceded during the deposition that he brought with him that day more documents than he had produced prior to the deposition.  (*See* DN 53-5 (Transcript ("Tr.") p. 42, l. 7-11 ("Q: So would you agree with me that there was material that was in your possession in September 2015 that you did not produce in response to my subpoena? A: Correct.").)  Moreover, Asta was testifying as an expert witness.

It should be obvious that Northwestern Mutual has a right, as the deposing party, to question the deponent regarding any documents that he produces,[5] and that it will likely take more time to address such documents if they are not produced prior to the deposition. Additionally, the Court is puzzled by Pogue's refrain that regarding a "customary two (2) hour

---

[5]         *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .").  Moreover, it is worth addressing Pogue's argument that Northwestern Mutual itself produced the documents that Dr. Asta brought to the deposition but had not previously produced.  The Court credits Northwestern Mutual's statement that among the documents that he brought to the deposition were some that it had never before seen.  Additionally, even if Pogue were correct that the source of the documents was Northwestern Mutual itself, that should not undermine Northwestern Mutual's ability to question Dr. Asta regarding the extent of his compliance with the subpoena, including the number of pages he had with him, their contents, and their relation to his treatment of Pogue.  In short, Pogue's argument on this point is not supported by the circumstances surrounding the deposition or, more generally, by the purposes of discovery as enunciated in Rule 26.

time period for an expert deposition[.]"[6]  (DN 48 at 2.)  As the above advisory notes excerpt –
and, to put it bluntly, common sense – makes clear, expert depositions are commonly the
category of depositions that lead a party to seek an extension of the seven-hour timeframe.  The
volume of documents and level of importance to the case that often go hand-in-hand with expert
testimony frequently lead to lengthier depositions.  This case is no exception.  Asta is one of two
treating physicians whom Pogue has designated as non-retained expert witnesses.

Additionally, the Court rejects Pogue's characterization of Northwestern Mutual's
deposition conduct.  Based on a close review of the transcript excerpts filed by Northwestern
Mutual, it is clear to the Court that – at least during those portions of the deposition that are in
the record – Northwestern Mutual's counsel was entirely cordial and decorous in his
communications with Asta and with Pogue's counsel.  Pogue has presented the Court with no
information that would contradict this view.  In sharp contrast, Pogue's counsel was consistently
argumentative and resorted to aggressive, even mean-spirited speech.  (*See, e.g.*, DN 53-5 (Tr. at
p. 48, l. 15-20 ("[Pogue's Counsel]: This has been nothing more than a harassing extension of
time, labor, and an issue for subpoena that you failed to follow through with."); *id.* at p. 49, l. 6-
13 ("[Pogue's Counsel]: I'm not going to stipulate to anything.  [Northwestern Mutual's
Counsel]: Fair enough.  [Pogue's Counsel]: Because I don't know what you're asking me to
stipulate to.  I think the foundation is incredibly weak and actually pointless.  Go ahead with
whatever you want to waste your time with.")  These contrasting approaches carried over into

---

[6]     The motion to quash is not the first time that Pogue and his counsel have pressed for the existence of a two-
hour timeframe for expert depositions.  Indeed, *during Dr. Asta's deposition*, Pogue's counsel informed
Northwestern Mutual's counsel that Dr. Asta had set aside a mere two hours for the deposition.  (*See* DN 53-5 (Tr.
P. 50, l. 1-7 ("[Pogue's Counsel]: [ . . . ] He's set aside 2 hours, which is very reasonable for this deposition, and
you've wasted 51 minutes --.  [Northwestern Mutual's Counsel]: We're not going to finish – you didn't tell me he
set aside two hours.  We're not going to finish in two hours.  So if he only has two hours –[.]").)  This exchange
lends credence to Northwestern Mutual's position that Pogue and his counsel deliberately impeded the length of the
deposition and obstructed its ability to complete the deposition on the date for which it was scheduled.

counsel's email communications.  While zealous advocacy is to be admired, Pogue's counsel has

in this case has *consistently* toed the line between advocacy and a combination of incivility and

perversion of the truth.   This conduct will not be tolerated.   *See, e.g.*, *Jacobs v. Lambda*

*Research, Inc.*, 2012 U.S. Dist. LEXIS 31066, at *3 n.1 (S.D. Ohio Mar. 8, 2012) ("[T]he Court

expects more civility from counsel than the tenor and tone of counsel's correspondence has

evidenced to date.   In short, the Court reminds counsel that professionalism and civility is

expected from all officers of the court.").   Pogue's counsel would do well to remember that

"[v]igorous advocacy does not require ad hominem contentious [] barriers to the effective

progress of litigation."   *Waldo v. Consumers Energy Co.*, 2012 U.S. Dist. LEXIS 45058, at *16

(W.D. Mich. Mar. 30, 2012).

Next, the Court emphatically rejects Pogue's argument that Northwestern Mutual's

second deposition subpoena should be quashed because it refused to resume the deposition after

Asta concluded his other obligation.  The record reflects that Asta not only agreed, but welcomed

the opportunity, to resume his deposition on a date that would accommodate his schedule.[7]

---

[7]         The following exchanges are instructive:

> Q: Dr. Asta, it's my understanding that you have an appointment that you
> cannot get out of this afternoon that is going to cause us to have to adjourn the
> deposition no later than 3 o'clock this afternoon [ . . . ] Nashville time; is that
> correct?
>
> A: That's correct.
>
> Q: It's my understanding, though, that you are willing – if we do not complete
> the deposition by 3 o'clock Nashville time, you are willing to come back at a
> mutually convenient date so that we can complete your deposition; is that
> correct?
>
> A: That's correct.

(*See* DN 53-5 at 7, Tr. 118, l. 2-16.)

Critically, Pogue does not dispute the accuracy of the deposition transcript proffered by Northwestern Mutual; nor does he argue that it cherry-picked only those portions of the transcript that support its position.  Rather, Pogue bases his argument that Asta agreed to resume on the same day, and that Northwestern Mutual refused to do so, *entirely* upon Asta's post-hoc declaration and discussions that purportedly took place off the record.

The Court finds that Asta's declaration is not credible.   As Northwestern Mutual accurately states, at the time that the deposition was halted to accommodate Asta's schedule, Pogue's counsel objected to the continuation of the deposition because, he said, he believed that the five hours that had already elapsed were sufficient.  He contended – and still maintains – that no more time was needed.  (*See, e.g.*, DN 53-5 at 9, Tr. 268, l. 21-25 ("We're going to object to the continuation of the deposition.  Five hours is more than adequate so – more than adequate to

---

Q: You would – you would – you are agreeing, though, to make yourself available since we're going to let out early for you today, correct?

A: Correct.

(*Id.* at 7, Tr. 118, l. 24; Tr. 119, l. 1-3.)

[Dr. Asta]: Do you want to reconvene at a later point?  That will give me the chance to get the record updated.  Again, I do apologize - .

[Northwestern Mutual's counsel]: Well, here is what – I'm not complete.  I'm not finished with your deposition.  But as we indicated earlier, you have a pressing appointment that you need to leave and go to, correct?

[Dr. Asta]: That's correct.

[Northwestern Mutual's counsel]: What – so I'm going to adjourn the deposition.  We'll reconvene at a convenient time.

[Dr. Asta]: Awesome, awesome."

[Northwestern Mutual's counsel]: Can you provide me with some dates?

[Dr. Asta]: Yeah, yeah.  We'll get a hold of Cotina upstairs, and that way all parties can make an agreement to come back, and we can do this again.").)

(*Id.* at 8-9, Tr. 265, l. 10-25; Tr. 266, l. 1-4.)

20

complete an expert deposition in this case.").)   For reasons unknown to the Court, Asta and Pogue are now attempting to rewrite history regarding the events of the day.  They strenuously argue that Asta offered to resume the deposition later on the same day and that Northwestern Mutual refused to do so.  At best, Pogue's argument is insufficient in the face of the transcript, which records the statements of Asta and counsel contemporaneous with the events in question. At worst, Pogue's argument and Asta's declaration are a joint attempt to mislead the Court as to the events surrounding the original deposition.

Regardless of Asta's motivations, he is bound by the Rules of Civil Procedure, and the Court finds that he must resume his deposition under the terms set forth in this memorandum opinion and order.

### c.  Compensation of Asta

Pogue further contends that the subpoena of Asta should be quashed because Northwestern Mutual failed to properly compensate Asta for his deposition.  Pogue made an identical argument in his motion to quash (DN 51) a subpoena served by Northwestern Mutual on Pogue's other treating physician, Dr. Braken Lewis.  As is noted above, the Court recently entered an order (DN 69) denying that motion to quash on the basis of lack of standing, but it addressed the issue of payment for participating in a deposition.  The Court's reasoning in that opinion applies equally with respect to the motion to quash the subpoena of Asta.

A party seeking to depose another party's expert witness has two distinct obligations as to payment.  First, Rule 45(b)(1) requires the deposing party to "tender[] the fees for 1 day's attendance and the mileage allowed by law . . . ."  Fed. R. Civ. P. 45(b)(1).  Federal statute sets the required daily witness fee at $40, plus compensation for travel time.  *See* 28 U.S.C. § 1821(b)

21

("A witness shall be paid an attendance fee of $40 per day for each day's attendance.  A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.").   In this case, Northwestern Mutual paid Asta $40 in conjunction with each subpoena.  (DN 53-7 at 6; *see* DN 53-53-5, Tr. 20 (acknowledging payment of $40 with initial subpoena served in September 2015); DN 53-7 at 6 ($40 check for March 10, 2016 deposition date).)  Because both depositions were set to be conducted at Asta's office, Northwestern Mutual was not required to pay him any amount related to travel.

Second, the deposing party is required to compensate an expert witness at a "reasonable" rate for time spent in responding to discovery.  *See* Fed. R. Civ. P. 26(b)(4)(E) ("Unless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D) . . . .").  On February 15, 2016, two days prior to the start of the original deposition, Northwestern Mutual expressly promised to compensate Asta for his time at a rate of $175 per hour.   (DN 53-4.) Northwestern Mutual's counsel anticipated compensating Asta following the deposition.  This is plainly reasonable given that at the time a deposition notice is served, no one knows precisely how long it will last.

While the Court finds herein that the deposition of Asta shall continue on a new date, the fact remains that he has already participated in a deposition for some five hours.  He need not continue to wait for payment for those five hours.[8]  Accordingly, the Court concludes that to the

---

[8]      The Court notes that Northwestern Mutual's counsel attempted to make arrangements for payment of Dr. Asta following the February 17, 2016 deposition.  (*See* DN 53-6 at 4 (email from Northwestern Mutual's counsel to Pogue's counsel, inquiring as follows: "Also, I have not received a billing statement from Dr. Asta for his time last week.   Should I contact him directly to make those arrangements?").)   It appears that Pogue's counsel did not

22

extent that it has not yet done so, Northwestern Mutual shall pay Asta a fee of $875 ($175 per hour for five hours) for his participation in the February 17, 2016 deposition.  The terms of such payment are set forth in the order below.  Northwestern Mutual shall compensate Asta for his time at the continuation of the deposition subsequent to that date.

Finally, as is addressed in the Court's opinion denying the motion to quash the subpoena of Dr. Lewis (DN 69), the Court finds that Pogue has conflated the two standards set forth above in an attempt to extract from the Court an order that Northwestern Mutual was required, and failed, to compensate Asta at his hourly rate *prior to* his deposition.  The Court need not belabor this point.  It suffices to say that Northwestern Mutual has satisfied its obligations pursuant to the Rules and federal statute: (1) it advanced the $40 fee for each day of depositions; (2) it did not owe any mileage fees; and (3) it expressly promised to compensate Asta at his hourly rate.  The Court can only see Pogue's arguments on this point as an attempt to mislead the Court.

### d. Pogue's Request for Attorneys' Fees and Costs

Finally, the Court need devote only scant attention to Pogue's request for attorneys' fees and costs in relation to the motion to quash.  It should be clear from the instant memorandum opinion and order that the Court wholly rejects Pogue's motion to quash (and further, as addressed below, the Court grants in part Northwestern Mutual's motion for sanctions).  The Court finds that, notwithstanding the Rule 37 certification included in the motion to quash (*see* DN 48 at 4), Pogue's counsel *did not* make a good-faith effort to resolve this dispute extra-

---

respond to Northwestern Mutual's inquiries regarding payment.  (*See* DN 53 at 14 ("Northwestern Mutual still awaits such a bill from Dr. Asta and reaffirms its commitment to prompt payment.").)  The foregoing supports *another finding* that Pogue's counsel is disingenuous in his account of the circumstances surrounding payment of Dr. Asta.  The Court's requirement that Northwestern Mutual compensate Dr. Asta for his five hours of participation should not be read as agreement with Pogue's account.  Rather, it is merely the Court's effort to ensure that Northwestern Mutual is able to fulfill its obligation to pay Dr. Asta, as it sought to do previously.

judicially.   (*See generally* DN 53-6 (email correspondence between counsel).)   Accordingly, Pogue's request for attorneys' fees and costs incurred in relation to the motion to quash is denied.

For all of the foregoing reasons, Pogue's motion to quash (DN 48) is **denied**.

### 2.  Motion for Leave to File Sur-Reply

"A motion is submitted to the Court for decision after completion of the hearing or oral argument – or if none – after the reply memorandum is filed, or the time for filing the reply memorandum has expired."  LR 8.1(g).  Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion.  *See Key v. Shelby County*, 551 Fed. Appx. 262, 264 (6th Cir. 2014) (citing *Eng'g Mfg. Servs., LLC v. Ashton*, 387 Fed. Appx. 575, 583 (6th Cir. 2010); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004)).  "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence."  *Liberty Legal Found. v. Nat'l Democratic Party of the USA*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012); *see, e.g.*, *Key*, 551 Fed. Appx. At 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply).

"As many courts have noted, '[s]ur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter."  *Id.* (quoting *In re Enron Corp. Secs.*, 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)) (additional citation omitted).  Nonetheless, "[a]lthough the Federal Rules of Civil Procedure do not expressly permit the filing of sur[-]replies, such filings may be allowed in appropriate circumstances, especially '[w]hen

24

new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key*, 551 Fed. Appx. at 265 (quoting *Seay v. Tenn. Valley Auth.*, 339 F. 3d 454, 481 (6th Cir. 2003)).

In this case, the Court finds that "appropriate circumstances" exist to permit Northwestern Mutual to file its proffered sur-reply. *Key*, 551 Fed. Appx. at 265. The Court finds that Pogue attached to his reply in support of the motion to quash significant new evidence in the form of Asta's declaration. *See id.* Pogue presented the declaration as new evidence to bolster the arguments he asserted in the motion to quash. Specifically, Pogue sought to use the declaration as a means of directly contradicting the deposition testimony upon which Northwestern Mutual relied in its response.

Because the declaration was filed in conjunction with Pogue's reply, rather than with his motion to quash, Northwestern Mutual would not have an opportunity to respond to the declaration were it not granted leave to file a sur-reply. Moreover, this is not a situation in which a party files a reply affidavit merely to respond to another party's arguments asserted in a response brief. Rather, in this case, Northwestern Mutual had no reason to suspect that Pogue would seek to bolster his own arguments in the motion to quash by filing the sworn declaration of his expert, a nonparty witness who is not represented by Pogue's counsel, particularly given that the declaration directly contradicts the declarant's deposition testimony. *Cf. Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476-77 (6th Cir. 2002) (denying plaintiff leave to file sur-reply because there was "no element of surprise" associated with a "reply affidavit" filed by defendant).

25

Based on the foregoing, Northwestern Mutual's motion for leave to file a sur-reply (DN 60) is **granted**.

### 3.   Motion to Exclude Asta's Testimony

The third and final motion that the Court addresses in this memorandum opinion and order is Northwestern Mutual's motion to exclude Asta's testimony (DN 54).   Northwestern Mutual argues that the Court should sanction Pogue and his counsel for their role in Asta's failure to obey a properly issued subpoena and for filing a motion to quash based on factual and legal misrepresentations.

Northwestern Mutual's motion to exclude sets forth three Rules-based grounds for imposing sanctions on Pogue.   First, Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides as follows: "If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders."   Fed. R. Civ. P. 37(b)(2)(A).   The basis for this theory is that a subpoena, though issued by a party, should be treated as an order of the court.   *See* Fed. R. Civ. P. 45 advisory committee's note (1991) ("Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions.") (citations omitted); *see also Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 455 (D.C. Md. 2001) ("Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court.") (citing *id.*).   Rule 37(b)(2)(A) provides a non-exhaustive list of possible sanctions, including, without limitation, striking pleadings in whole or in part, staying further proceedings until the order is obeyed, and, as Northwestern Mutual requests in this case, "prohibiting the

disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii); *see generally id.* at (i)-(vii).

Second, Northwestern Mutual points to Rule 37(c)(1), which provides as follows: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). It further provides that, "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard[,] (A) may order payment of reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.* at (c)(1)(A)-(C).

Finally, Northwestern Mutual argues that the Court may sanction Pogue through its inherent power to control discovery.  (DN 54-1 at 3 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991)).)  "[A] district court has broad discretion to control discovery, including the ability to impose sanctions on uncooperative litigants."  *Wandner v. Am. Airlines*, 79 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015) (citing *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993)).

In addition to the three potential bases for imposing sanctions that are proposed by Northwestern Mutual, the Court notes that Rule 30 provides yet another basis.  Specifically related to actions in conjunction with depositions, Rule 30 provides as follows: "The court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the

27

deponent."  Fed. R. Civ. P. 30(d)(2); *see, e.g.*, *Fedex Corp. v. United States*, 2011 U.S. Dist. LEXIS 59570 (W.D. Tenn. Mar. 28, 2011) (finding that counsel instructed client not to answer questions calling for relevant, nonprivileged information and "rais[ed] numerous argumentative objections that were designed to impede and frustrate the fair examination of [the deponent]," imposing monetary sanctions pursuant to Rule 30(d)(2), and requiring deponent to sit for up to five hours of additional deposition time).

In an effort to preserve some level of efficiency in a case rife with discovery disputes, the Court has chosen to address Pogue's motion to quash and Northwestern Mutual's motion to exclude in the same memorandum opinion.  The discussion above regarding the motion to quash sets forth in exhaustive detail the troubling aspects of Asta's deposition and the subsequent actions of Pogue and Asta.  That information need not be reproduced in full here.  It suffices to say that the actions of Pogue's counsel and Asta are deeply concerning to the Court. Specifically, the Court finds that Pogue and/or his counsel violated Rule 37(b)(2)(A) by failing to obey a properly issued subpoena – which has the effect of a court order – for Asta's renewed deposition.

Additionally, the Court finds that *both Pogue and Asta* have "imped[ed], delay[ed], [and] frustrate[d] the fair examination of the deponent," Asta.  Fed. R. Civ. P. 30(d)(2).  As is discussed above in relation to the motion to quash, Pogue's counsel impeded the deposition by conducting himself in an obstructive, argumentative manner in the course of the deposition. Moreover, Asta failed to produce, prior to the deposition, all documents in his possession that were within the scope of the subpoena.  This delayed the progression of his original deposition and, contrary to Pogue's representations, was not caused by any fault on the part of Northwestern

28

Mutual or its counsel.  Later, Pogue and Asta misrepresented the facts surrounding the suspension of his original deposition, in order to protest resuming the deposition without adequate factual or legal basis.  Finally, Pogue has consistently misrepresented the statutory and Rules-based requirements for compensating Asta for his time in producing documents and participating in a deposition, apparently in the hope that the Court would use such failure to compensate Asta as a reason to grant the motion to quash.

The Court finds that any one of these actions could support the imposition of sanctions on Pogue and his counsel.  Pogue's actions in relation to Asta constitute violations of both Rule 30 and Rule 37.  Accordingly, the Court will impose sanctions pursuant to Rule 37(b)(2)(A), Rule 30(d)(2), and its own inherent authority.  The next question for the Court is, then, what sanctions are fitting under the circumstances in this case.  The Court concludes that in the context of this case, complete exclusion of Asta's testimony, as requested by Northwestern Mutual, would be extreme.  Asta is one of two treating physicians designated by Pogue as non-retained expert witnesses; Pogue has not designated any retained expert witnesses (and the deadline for him to do so has passed and will not be extended.  (*See* DN 71 (issued concurrently with the instant opinion, addressing motions for extensions and setting new case management deadlines).).  In the absence of evidence in the record showing that *Pogue himself*, as distinguished from his counsel and from Asta, has acted in violation of the Federal Rules of Civil Procedure as they relate to Northwestern Mutual's efforts to depose and obtain documents from Asta, the Court finds that to exclude Asta's testimony in its entirety would be unduly punitive to a party who is *presumably* unaware of the antics of his counsel and his non-retained expert witness.  Accordingly, the Court imposes the following sanctions in the alternative.

29

First, the Court imposes certain terms on the deposition of Asta at such time as it is reconvened by Northwestern Mutual.  The Court will not require Northwestern Mutual to limit its questioning of Asta to the five hours of deposition time that have already elapsed, nor will the Court require it to confine the remainder of its questioning to two hours in order to remain within the seven-hour time limit set forth in Rule 30(d)(1).  Instead, the Court concludes that Northwestern Mutual may depose Asta for *up to seven (7) additional hours*.  The Court finds that such time is reasonable given the actions of Pogue and Asta to impede Northwestern Mutual's efforts to conduct a deposition of Asta.  Additionally, Northwestern Mutual shall again conduct the deposition at Asta's place of employment After the deposition is completed and the duration of the reconvened deposition is known to all, Northwestern Mutual shall compensate Asta for his time at a rate of $175 per hour; contrary to Pogue's argument, it need not compensate him for his participation in the reconvened deposition until after he has actually participated.

Additionally, it is obvious from the instant memorandum opinion and order that Northwestern Mutual has prevailed with respect to the contested issues surrounding the deposition of Asta.  As a result of Northwestern Mutual being forced to expend significant resources in relation thereto, including but not limited to defending the motion to quash, the Court finds that Northwestern Mutual is entitled to reimbursement for its attorneys' fees and costs incurred in relation to (1) the motion to quash (DN 48), (2) the motion to exclude (DN 54), and (3) the motion for leave to file a sur-reply (DN 60).  The terms for such reimbursement are set forth in the Conclusion section below.

**CONCLUSION**

IT IS HEREBY ORDERED as follows:

(1)      Pogue's motion to quash the deposition of Dr. Roy Asta (DN 48) is **DENIED**.  IT
IS FURTHER ORDERED that Northwestern Mutual shall not set a new date for the deposition
of Asta until after the Court has entered an amended scheduling order.  At such time,
Northwestern Mutual may set a date to reconvene the deposition, taking into account the terms
set forth herein.

(i)      Within **three (3) days** of the entry of this order, Pogue's counsel shall
provide to Northwestern Mutual's counsel Asta's Taxpayer Identification Number or any
other information necessary to allow Northwestern Mutual to issue payment to Asta.

(ii)      Within **fourteen (14) days** of entry of this order, Northwestern Mutual
shall send to Asta a check for $875 as compensation for his participation in the deposition
conducted on February 17, 2016.  Northwestern Mutual shall send the check to Asta at
his business address.

(2)      Northwestern Mutual's motion for leave to file a sur-reply to the motion to quash
(DN 60) is **GRANTED**.  Northwestern Mutual's proposed sur-reply (DN 60-1) is hereby
DEEMED FILED.

(3)      Northwestern Mutual's motion to exclude Asta's testimony (DN 54) is
**GRANTED IN PART** and **DENIED IN PART**.

(i)      The motion is **denied** insofar as it requests exclusion of Asta's testimony.

(ii)      The motion is **granted** insofar as it requests that Pogue be sanctioned for
the conduct of his counsel in relation to Asta.  Specifically, IT IS HEREBY ORDERED

31

that Northwestern Mutual MAY RECONVENE the deposition of Asta **for up to seven (7) hours**. **Subsequent to the reconvened deposition**, Northwestern Mutual shall compensate Asta for his time at a rate of $175 per hour.

(4)    IT IS FURTHER ORDERED that **Pogue's counsel** shall REIMBURSE Northwestern Mutual for its attorneys' fees and costs incurred in relation to the motion to quash (DN 48), the motion to exclude (DN 54), AND the motion for leave to file a sur-reply (DN 60). Such reimbursement shall be made BY COUNSEL and SHALL NOT be charged as costs to Pogue or otherwise be deducted from any payment Pogue receives in conjunction with this action. **No later than ten (10) days after entry of this memorandum opinion and order**, counsel for Northwestern Mutual shall provide to Pogue's counsel documentation of its attorneys' fees and costs incurred in relation to the three motions listed above. **No later than ten (10) days after receiving such documentation from defense counsel**, Pogue's counsel shall pay Northwestern Mutual the amount requested, by such means as are preferable to Northwestern Mutual, OR file with the Court any objections they have to Northwestern Mutual's reported fees and costs. **Any such objections shall be limited to the reasonableness of the amounts claimed**.

(5)    Finally, IT IS HEREBY ORDERED that neither party shall file a discovery-related motion without first requesting and participating in a telephonic conference with the Court. Either party may request such a conference by contacting Case Manager Theresa Burch at theresa_burch@kywd.uscourts.gov.

cc:  Counsel of record