UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-598-CRS

JAMES H. POGUE,     Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,     Defendant.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to exclude what Plaintiff James H. Pogue ("Pogue") describes as an untimely rebuttal report by an expert witness. In the motion to exclude (DN 115), Pogue contends that Defendant The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") violated the operative scheduling order by producing a rebuttal expert report after the deadline for rebuttal experts had passed. Northwestern Mutual filed a response and Pogue filed a reply. (DN 116, 121.) The motion to exclude is now ripe for review.

### BACKGROUND

This action arises from Northwestern Mutual's denial of a disability insurance claim by Pogue, a physician. Due in large part to a number of discovery-related disputes in this case, the scheduling order has been modified on several occasions. At times, the scheduling orders themselves have engendered disagreements, particularly in relation to the deadline for rebuttal experts. The memorandum opinion entered on December 21, 2016 by Senior Judge Charles R. Simpson, III provides background information on that issue. In that opinion and the accompanying order (DN 118, 119), Judge Simpson denied Pogue's objections (DN 99) to the Magistrate Judge's July 29, 2016 amended scheduling order (DN 96), and the rebuttal expert

deadline established therein remained in effect. Specifically, the amended scheduling order required both parties to disclose rebuttal experts, if any, no later than August 8, 2016. (DN 96 at 2.) The same deadline applied for Rule 26(e) supplemental disclosures.[1] (*Id.*) Pogue asserts in his motion to exclude that Northwestern Mutual violated the amended scheduling order by disclosing a rebuttal expert after the August 8, 2016 deadline.

### 1. The Motion to Exclude

Pogue contends that he complied with the amended scheduling order by disclosing his rebuttal expert report and supplementing his discovery responses on or before August 8, 2016. (DN 115 at 1.) According to Pogue, Northwestern Mutual merely supplemented its Rule 26(e) disclosure and its Rule 26(a)(1) initial disclosures; it did not disclose a rebuttal expert report prior to the August 8, 2016 deadline, and further, it did not inform the Court during an August 17, 2016 status conference of any ongoing issues related to rebuttal experts. (*Id.* at 2 (citing DN 104 (report and order on August 17, 2016 status conference)).) Instead, according to Pogue, on September 16, 2016, Northwestern Mutual sent to Pogue's counsel a rebuttal expert report from Sara Swanson, PhD, ABPP ("Dr. Swanson"), one of Northwestern Mutual's expert witnesses. (*Id.*) Pogue contends that Dr. Swanson's rebuttal report should be excluded from evidence, along with any testimony related to or based on her rebuttal report, due to its untimely nature. (*Id.*)

---

[1] In the amended scheduling order, the Court also required that, prior to filing any discovery-related motion, a party confer in good faith with opposing counsel and participate in a telephonic conference with the Court. (DN 96 at 3.) On November 1, 2016, the Court conducted an in-person conference to discuss multiple discovery disputes. Following that conference, on November 3, 2016, the Court entered an order permitting Pogue to file a motion "related to alleged violations by Northwestern Mutual of the existing scheduling order, including, without limitation, violations of the deadlines for written discovery and/or notice of rebuttal experts." (DN 113 at 2.) Pogue filed the motion to exclude (DN 115) in accordance with the Court's November 3, 2016 order.

Pogue argues that Northwestern Mutual must show that providing its rebuttal expert report untimely was harmless, and that it has not done so. Specifically, Pogue argues that it is to permit Northwestern Mutual to use the untimely report would "requir[e] [him] to now question Swanson [and take further, related discovery] -- after discovery is closed -- [which] would do nothing more than increase the cost and further delay the litigation." (*Id.* at 2.) Pogue contends that the opinions expressed by Dr. Swanson in the rebuttal expert report were not included in her initial expert report, and that Northwestern Mutual did not supplement that report. Therefore, he concludes, the Court should not permit Northwestern Mutual to use the rebuttal expert report in any way in this case.

Pogue urges the Court to reject any argument by Northwestern Mutual that Dr. Swanson's report was merely an addition to the claim file and not a rebuttal expert report. Pogue concedes that Northwestern Mutual has an ongoing duty to investigate Pogue's claim for disability benefits, but he claims that Dr. Swanson's report was created solely for purposes of this litigation, not merely to supplement the claim file. (DN 115 at 5.) In support of this position, Pogue points to the following factors: (1) the report was presented in the form of a letter addressed to counsel for Northwestern Mutual in this litigation; (2) Dr. Swanson's language in the report shows that it was created at defense counsel's request; (3) Dr. Swanson is employed by an entity separate from Northwestern Mutual; and (4) the contents of the report show that it was created solely to rebut Pogue's rebuttal expert report. (*Id.* at 5-6.) Finally, Pogue argues that the rebuttal report goes beyond the scope of Northwestern Mutual's Rule 26 expert disclosure and Dr. Swanson's original expert report.

    **2.**    **Northwestern Mutual's Response**

Northwestern Mutual filed a short response (DN 116). It argues that Pogue's rebuttal expert report, produced by Michael H. Cecil, Psy. D., HSPP ("Dr. Cecil"), contains opinions that are not reflected in or differ from all other medical records in this case, including records produced by Pogue's treating physicians. (*Id.* at 1.) Specifically, according to Northwestern Mutual, "Dr. Cecil opined that mental restrictions prevent Pogue[] from practicing medicine and that such restrictions are attributable to 'brain trauma' that has never been documented, reported, described, or identified in any of Pogue's treatment records." (*Id.*) Northwestern Mutual asserts that Pogue's longtime treating physician "has specifically acknowledged that he has no reason to believe that Pogue ever suffered from any sort of traumatic brain injury;" that Dr. Cecil did not take a history from Pogue that indicated any history of traumatic brain injury; and that Pogue has never made a disability claim related to head trauma or mentioned it in any claims materials submitted to Northwestern Mutual. (*Id.* at 1-2.)

Northwestern Mutual asserts that after it received Dr. Cecil's report, it forwarded the report to Dr. Swanson, who it describes as having "provided Northwestern Mutual with reports both in connection with the claims determination and as an expert witness in the instant litigation." (DN 116 at 2.) Northwestern Mutual insists that Dr. Swanson's letter is not a rebuttal expert report, but rather, it is merely an update to the claim file due to the new theory contained in Dr. Cecil's report. Nonetheless, Northwestern Mutual goes on to state that "[i]t is worth noting, however, that Dr. Swanson's previous reports and Northwestern Mutual's expert witness disclosures did not mention Dr. Swanson's assessment of Dr. Cecil's report because Dr. Cecil's opinions were not provided to Northwestern Mutual until August 8, 2016." (*Id.*) Therefore, Northwestern Mutual's position is that it did not have reason to consider the issue of

head trauma as it may relate to Pogue's disability claim until the issue was raised by Dr. Cecil. Northwestern Mutual closes by arguing that because "Dr. Cecil is the first and only medical provider who has identified traumatic brain injury as a factor in Pogue's condition[,] [n]either Northwestern Mutual nor its experts should be prevented from pointing that fact out at trial." (*Id.* at 3.)

        3.        **Pogue's Reply**

In reply, Pogue reiterates his arguments from the motion to exclude. He contends that Northwestern Mutual disregarded orders of this Court by issuing a rebuttal expert report over a month after the applicable deadline had passed, and that Northwestern Mutual has not demonstrated any justification or evidence of harmlessness in relation to this action. (DN 121 at 2.) Pogue argues that Northwestern Mutual does not and cannot refute his arguments as to why Dr. Swanson's letter constitutes a rebuttal expert report rather than a mere supplement to the claim file. (*Id.* at 3.)

**DISCUSSION**

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, a party must disclose its expert witnesses and their reports "in the sequence that the court orders" and "must supplement these disclosures when required under Rule 26(e)." Fed. R. Civ. P. 26(a)(2)(D), (E). The deadline for disclosure of rebuttal experts was August 8, 2016. (*See* DN 96 at 2; DN 118-119.) It appears to be undisputed that Pogue complied with this deadline when he produced Dr. Cecil's rebuttal report. It is undisputed that Dr. Swanson's September 16, 2016 letter was entered in Pogue's claim file and served on Pogue's counsel more than a month after the rebuttal expert deadline had passed.

5

Pogue's argument is simple: he contends that Dr. Swanson's letter was produced out of time and that Northwestern Mutual has not shown-- and cannot show-- that this delay was harmless. He further argues that Dr. Swanson's letter is not a proper rebuttal expert report because the opinions asserted therein cannot be found in Northwestern Mutual's Rule 26 expert disclosure or in Dr. Swanson's original expert report.

In response, Northwestern Mutual offers the argument that Dr. Swanson's letter is *not* a rebuttal expert report, but rather, merely an exercise of Northwestern Mutual's duty to maintain an updated claim file. It contends that Dr. Cecil's rebuttal report contains an entirely new theory of the case, namely, that Pogue is disabled due to head trauma, and that it was compelled to respond to that by having its consulting neuropsychologist review and respond to Dr. Cecil's report. This position appears reasonable on the surface, but does not withstand scrutiny. Northwestern Mutual undermines its own position with the two concluding sentences in its response. It states, "Dr. Cecil is the first and only medical provider who has identified traumatic brain injury as a factor in Pogue's condition. Neither Northwestern Mutual nor its experts should be prevented from pointing that fact out at trial." (DN 116.) In short, Northwestern Mutual asks the Court to view Swanson's letter regarding Dr. Cecil's opinion as a mere addition to the claim file, but explicitly asks to permit it to utilize the letter *for purposes of this litigation* as a rebuttal to Dr. Cecil.

Regardless of any ongoing duty that Northwestern Mutual may have, outside of this litigation, to update Pogue's claim file, it is clear to the Court that Northwestern Mutual wishes to use Dr. Swanson's supplemental report as a rebuttal opinion and not merely updating the claims file. The Court will not permit Northwestern Mutual to do this. The Court construes Dr.

6

Swanson's supplemental report regarding Dr. Cecil's rebuttal opinion to be an untimely rebuttal expert opinion. On the basis of the current record, Pogue's motion to exclude must be granted.

It is notable that Northwestern Mutual could have asserted its position in at least two other ways. First, Northwestern Mutual could have sought to exclude or limit Dr. Cecil's rebuttal expert report due to its having allegedly raised a new theory. *See, e.g.*, *Madison Capital Co., LLC v. S&S Salvage, LLC*, 2011 U.S. Dist. LEXIS 4788, *10-13 (W.D. Ky. Jan. 19, 2011) (excluding portions of rebuttal expert evidence, stating that they were offered "as a means of bolstering [the] primary expert . . . and its case-in-chief" and that "[t]his is an impermissible use of rebuttal experts"); *Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 879 (S.D. Ohio 2010) (rejecting a so-called rebuttal expert report, reasoning that it "constitute[d] an improper attempt to correct the weaknesses and improprieties of his original reports").

Second, Northwestern Mutual could have moved for leave of court to file Dr. Swanson's rebuttal of Dr. Cecil's report out of time. As the proponents of Dr. Swanson's testimony, Northwestern Mutual bears the burden of demonstrating that its failure to timely produce her rebuttal report was harmless. *Baker*, 680 F. Supp. 2d at 879 (citing *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)). "A violation of Rule 26(a)(2) will generally be harmless if it involves an honest mistake on the part of one party coupled with sufficient knowledge on the part of the other party." *Id.* (citing *Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 264 (6th Cir. 2001)). In this case, Northwestern Mutual could have asserted that it needed to submit a new, untimely report by Dr. Swanson due to the novelty of Dr. Cecil's position in his rebuttal expert report. Moreover, a party is free to move the Court to modify an existing scheduling order, which the Court may do for good cause; this very case offers several

7

examples of situations in which the Court has found that good cause existed to modify a scheduling order. Fed. R. Civ. P. 16(b)(4).

## ORDER

Accordingly, IT IS HEREBY ORDERED that Pogue's motion to exclude (DN 115) is **GRANTED**.


cc: Counsel of record