UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:14-CV-598-CRS

JAMES H. POGUE,                                                    Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,          Defendant.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to reopen the Rule 30(b)(6) deposition of Defendant The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") (DN 114).   Plaintiff James H. Pogue ("Pogue") contends that he was unable to complete the deposition as planned due to a number of problems caused by Northwestern Mutual and its attorney.  Northwestern Mutual filed a response and Pogue filed a reply.  (DN 117, 120.)  For the following reasons, Plaintiff's motion to reopen the 30(b)(6) deposition (DN 114) is **denied**.

BACKGROUND

This action arises from Northwestern Mutual's denial of a disability insurance claim by Pogue, a physician.  This case has been plagued by a series of discovery-related disputes, one of which related to Pogue's efforts to take the Rule 30(b)(6) deposition of Northwestern Mutual.  Pogue sought to depose Northwestern Mutual in Louisville, Kentucky.   Northwestern Mutual moved the Court for a protective order requiring the deposition to be conducted at its principal place of business in Milwaukee, Wisconsin.  On May 3, 2016, the Court granted the motion for protective order, requiring that any 30(b)(6) deposition be conducted in Milwaukee.  (DN 63.)  In the alternative, the Court permitted the parties to agree to a video deposition.  Pogue objected to that ruling (DN 68); Senior District Judge Charles R. Simpson, III overruled the objection on

June 16, 2016 (DN 79, 80).  The Magistrate Judge later entered an amended scheduling order requiring the 30(b)(6) deposition to be completed no later than September 30, 2016 (DN 96, 104).  On September 28, 2016, Pogue deposed two individuals designated by Northwestern Mutual as Rule 30(b)(6) representatives, Andrew Gurlik ("Gurlik") and Sharon Hyde ("Hyde").  (*See* DN 114-1 (Gurlik deposition transcript); DN 114-2 (Hyde deposition transcript).)

On November 1, 2016, upon Pogue's request, the Court conducted an in-person status conference to address certain discovery-related disputes.  At that conference, Pogue raised concerns regarding the 30(b)(6) deposition.  The Court permitted Pogue to file a motion to reopen the 30(b)(6) deposition.  (DN 113.)  Thereafter, Pogue filed the motion to reopen the deposition that is now before the Court.

### A.    Pogue's Motion to Reopen the Deposition

Pogue asserts that he was unable to complete the September 28, 2016 30(b)(6) deposition for four reasons, all of which he attributes to the conduct of Northwestern Mutual and its counsel.  First, argues Pogue, the deposition revealed that Northwestern Mutual has not produced all documents necessary for completion of the deposition.  The motion contains a bulleted list of documents that, Pogue contends, the deponents identified as relevant to this action, but that Northwestern Mutual has not produced.  Second, Pogue argues that Northwestern Mutual's witnesses were not prepared to testify as to all topics set forth in the deposition notice.[1]  Pogue

---

[1]    The 30(b)(6) deposition notice identified the following six topics regarding which the designated representative(s) should be prepared and able to testify.

   1)  Plaintiff's claim for benefits under the respective insurance policies at issue in this lawsuit.
   2)  Defendant's responses to written discovery, including Rule 26 disclosures.
   3)  Defendant's pleadings and defenses.
   4)  Defendant's reserves for Plaintiff's claim.

2

argues that Northwestern Mutual failed to object to any of the topics in the deposition notice after having received the notice as early as October 2015; rather, it objected only to the location of the deposition. Pogue's position is that Northwestern Mutual's 30(b)(6) representative was unable to answer questions without reviewing the claim file, despite claiming to have reviewed the file in preparation for the deposition. Pogue claims that he is prejudiced by this failure to adequately prepare a witness, "which is tantamount to a failure to appear for a deposition." (DN 114 at 10.) Third, Pogue argues that Northwestern Mutual's attorney "obstructed the deposition with improper speaking and coaching objections" in violation of Rule 30(c)(2) of the Federal Rules of Civil Procedure. (DN 114 at 3.) Pogue cites several instances in Gurlik's deposition transcript which, he says, show that Northwestern Mutual's attorney interrupted and impeded the deposition by improperly objecting to Pogue's questioning and by coaching the witness. (*Id.* at 11-14.)

Finally, Pogue contends that he was forced to terminate the deposition before questioning was completed, due to both Northwestern Mutual's actions and court reporter obligations. Pogue describes the situation as follows:

> On the day of the deposition, the court reporters on both ends of the deposition (in Kentucky and in Wisconsin) had obligations requiring the deposition to adjourn at a specific time. The Wisconsin reporter indicated she had a prior commitment and could not continue much past 5 p.m. (central time). She did offer to see about calling in another reporter. However, given that the local reporter in Louisville was already overtime, Dr. Pogue elected not to inconvenience either the Wisconsin or the Louisville

---

5) Sara Swanson, including her relationship with Defendant and involvement with Plaintiff's claim.
6) Michael Logan, including his relationship with Defendant and involvement with Plaintiff's claim.

(DN 117-10 at 4-5.)

3

> reporters any further.   Further, given [Northwestern Mutual's] failure to produce necessary documents or a properly prepared witness, Dr. Pogue sought to avoid incurring any further expenses likely attributable to the court reporters working overtime. Therefore, he ended the deposition at that time so as to allow the parties time to work out the dispute, and if necessary (as now), to seek relief from the Court.

(DN 114 at 14.)

Pogue requests that the Court order (1) that Northwestern Mutual appear for a second 30(b)(6) deposition; (2) that Pogue be allotted seven additional hours to conduct such deposition; and (3) that Northwestern Mutual reimburse Pogue for his attorney's fees and expenses associated with the first deposition.  (*Id.* at 3.)

### B.      Northwestern Mutual's Response

In response, Northwestern Mutual frames the motion as an "attempt[] to fabricate a pretense for continuing the deposition" and argues that Pogue's arguments are not supported by the record.  (DN 117 at 1.)  First, with respect to Pogue's argument that it failed to produce all relevant documents, Northwestern Mutual argues that Pogue never requested many of the materials to which he claims to be entitled.  (DN 117 at 7.)  Additionally, it contends that it made valid relevancy objections to some of the documents that Pogue claims were never produced. (*Id.* at 9-10.)  Northwestern Mutual further argues that some of the documents to which Pogue claims he is entitled relate solely to Pogue's bad faith claim, which was bifurcated from the breach of contract claim upon Pogue's own motion.  (*Id.* at 2-3.)  It argues that it objected to certain of Pogue's discovery requests, particularly requests related to materials possessed by Northwestern Mutual regarding "reserves" for Pogue's claim, on that basis.  (*Id.* at 3.)  With respect to its claims of confidentiality, Northwestern Mutual contends that it worked with

4

Pogue's counsel to craft an agreed protective order, but that Pogue's counsel let the matter of a protective order drop and the materials in issue were never produced.

Second, with respect to the alleged lack of preparation by Northwestern Mutual's witnesses, it argues that its witnesses were knowledgeable about and prepared to discuss the issues identified in the deposition notice, but that Pogue's counsel chose not to question the witnesses about the topics on which they were prepared to testify.  Northwestern Mutual focuses its response on Hyde, noting that Pogue's motion does not discuss Gurlik's testimony with any specificity.  (*Id.* at 10 n. 4.)  It argues that Hyde was extensively involved in Pogue's claim evaluation and that Hyde thoroughly reviewed the claim file in preparation for the deposition.  (*Id.* at 11.)  It further argues that Hyde was prepared to testify regarding the claim file, but that Pogue's counsel instead questioned her for five hours regarding policy language, including many provisions that are not at issue in this action.  (*Id.* at 5-6.)

According to Northwestern Mutual, Pogue's counsel's conduct "suggests that counsel was attempting to create the appearance that Ms. Hyde was not prepared because she had not memorized the thousands of documents in the claims file."  (*Id.* at 11; *id.* at 12 ("Indeed, Pogue's counsel spent virtually no time on the topics listed in the deposition notice.  Instead, he spent the majority of the five hours examining Ms. Hyde on the language of the policies, including many policy provisions that are not at issue in this action.").)  Northwestern Mutual cites a number of instances in the record that it contends illustrate Pogue's counsel's attempts to improperly question Hyde, by asking her questions beyond the scope of the deposition notice, refusing to allow her to reference any materials in order to answer questions, and repeatedly asking questions that she had already answered.  (*Id.* at 13-15.)

5

Third, regarding Northwestern Mutual's attorney's alleged disruption of the deposition, Northwestern Mutual argues that its attorney merely made objections that "were necessary and appropriate to note the improprieties in the examination and preserve objections that are required by the Rules." (*Id.* at 19.)  Moreover, it contends that Pogue fails to argue that Northwestern Mutual's counsel's objections prevented him from obtaining any information from the witnesses. (*Id.* at 20.)

As to the circumstances surrounding the termination of the deposition, Northwestern Mutual states that the Milwaukee court reporter advised that a substitute could be found so that the deposition could go forward, and that Northwestern Mutual was willing to continue despite more than seven hours having elapsed.  (DN 117 at 6.)  According to Northwestern Mutual, Pogue's counsel simply refused to proceed.  As to Pogue's discussion of two court reporters, Northwestern Mutual states as follows:

> That statement [regarding one court reporter in each location] is puzzling inasmuch as the depositions were conducted by video conference and a Louisville court reporter does not appear on the video monitor and was not identified on the record.  Moreover, the deposition notice did not indicate that the proceedings would be transcribed by a court reporter in Louisville in addition to the reporter in Milwaukee.   The transcript does not reflect that a Louisville court reporter was present, was "on overtime," or was inconvenienced by proceeding past 5:00 p.m. as stated in Plaintiff's Motion [DN 114 at 14].  Finally, Northwestern Mutual's counsel was never advised that a court reporter was present in Louisville.

(DN 117 at 6 n.2.)

Finally, Northwestern Mutual argues that Pogue's motion, while "replete with harsh language and requests for severe sanctions," lacks "substantive issue identification, factual support, and legal reasoning" that would create any real basis for sanctions.  (DN 117 at 21.)

6

### C.      Pogue's Reply

Pogue filed a reply (DN 120).  First, with respect to documents that Northwestern Mutual has not produced, Pogue argues that the "Guidelines Manual" he seeks is highly relevant to determining the meaning of policy terms that are subject to multiple interpretations.  (DN 120 at 2.)  As to Northwestern Mutual's argument that Pogue should have pursued the documents earlier, Pogue states that "[r]ather than go forward with a motion to compel, [he] decided it would be more economical for him to address the discovery issues during the 30(b)(6) deposition noticed for December 9, 2015 -- over three months before the close of discovery."  (*Id.* at 2-3 (citing DN 29).)  He contends that had that deposition gone forward as scheduled, he would have had a great deal of time to seek relief, but "[u]nfortunately, [Northwestern Mutual] opposed the depositions, as well as [his] efforts to amend the schedule."  (*Id.* at 3.)  He further argues that he agreed to keep confidential all documents so marked until Northwestern Mutual filed a motion for protective order, but that Northwestern Mutual ignored that offer.  (*Id.*)

Second, Pogue insists that Hyde was not adequately prepared for the deposition, and that his motion cites just a few instances in a pattern of answers showing the lack of preparation. (DN 120 at 3.)  He rejects Northwestern Mutual's contentions that his counsel was combative and focused on matters beyond the scope of Hyde's knowledge.   Third, Pogue provides additional argument regarding what he deems improper speaking objections and coaching by Northwestern Mutual's attorney, stating that counsel failed to make concise, nonargumentative and nonsuggestive objections, as required by Rule 30(c)(2).

Finally, regarding the dual-court reporter issue, Pogue states that Northwestern Mutual attempts "to make an issue where none exists."  (DN 120 at 11.)  He states that one court reporter

was present in Wisconsin for purposes of "stenographic recording of the deposition," and another court reporter was present in Kentucky for purposes of "assisting Dr. Pogue's counsel in coordinating the video conference with the court reporter in Wisconsin." (*Id.*) Pogue contends that when the Wisconsin court reporter indicated that she could not continue much past 5:00 p.m. Central time, the Kentucky court reporter, who was on Eastern time, was already working past her regular hours due to the time difference. Pogue asserts that he elected to end the deposition at that time in order to allow the parties more time to work out their "pending issues" and avoid increasing his own costs. (*Id.*) He states that this choice was "substantially justified and does not provide any reason for this Court to deny his requested relief." (*Id.*)

## DISCUSSION

The Court has carefully reviewed the deposition transcripts and the parties' briefs. The Court's discussion is structured in the same manner as the parties' briefs, addressing the following four issues: (1) whether Northwestern Mutual failed to produce all documents necessary for completion of the deposition; (2) whether Northwestern Mutual's representatives were unprepared to testify; (3) whether Northwestern Mutual's attorney obstructed the deposition by making improper objections and coaching the deponents; and (4) whether the issue related to the dual court reporters has any bearing on Pogue's request to reopen the deposition.

### A.     Legal Standard

Rule 30 of the Federal Rules of Civil Procedure relates to depositions by oral examination. If a deponent "has already been deposed in [a] case," then "[a] party must obtain leave of court" in order to depose the person again. Fed. R. Civ. P. 30(a)(2)(A)(ii). "[T]he court

must grant leave [to resume the deposition] to the extent consistent with Rule 26(b)(1) and (2)."

*Id.* at (a)(2).  Rule 30(b)(6) provides as follows:

> (6) *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

Rule 26(b)(1) is the touchstone for the scope of civil discovery.  It provides as follows:

> (1) *Scope in General.*  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any party's claim or defense."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  The Court has wide discretion when dealing with discovery matters, including whether information might be relevant.  *See S.S. v. E. Ky. Univ.*, 532 F.3d 445,

451 (6th Cir. 2008); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).  Rule 26 was recently amended to include a proportionality provision.  *Albritton v. CVS Caremark Corp.*, 2016 U.S. Dist. LEXIS 83606 at *4 (W.D. Ky. June 28, 2016) ("Proportionality is the touchstone of the revised Rule 26(b)(1)'s scope of discovery provisions.").

Rule 26(b)(2) addresses limitations on the frequency and extent of discovery.  Subpart (b)(2)(A) gives the court discretion to alter limits on written discovery and the length of depositions under Rule 30, and subpart (b)(2)(B) sets forth limitations on electronically stored information.  *Id.* at (b)(2)(A)-(B).  Finally, subpart (b)(2)(C) provides that, "[o]n motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1) [set forth above]."  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) (emphasis added).

## B. Alleged Non-Production of Documents

Pogue's motion to reopen the deposition includes a bulleted list of documents[2] that he claims Northwestern Mutual should have produced before the deposition.  (See DN 114 at 2.)

---

[2]    The list is as follows:

- Blue Blanks for 2011-2016.
- Balance Sheets for 2011-2016.
- Deviation Standards for 2011-2016.
- Production Reports for 2011-2016.
- Tracking/Trending Reports for 2011-2016.
- Guidelines Manual for 2011-2016.
- NWML's "philosophy"

(DN 114 at 2.)

As a preliminary point, the Court rejects Pogue's characterization of Northwestern Mutual's statements regarding the allegedly missing documents. Pogue claims that, "by its own admission, [Northwestern Mutual] failed to provide all relevant and necessary documents as part of its discovery disclosures, thereby preventing Dr. Pogue from properly preparing for as well as completing this questioning." (Id. at 4.) This is at best a half-truth. While Northwestern Mutual concedes that it has not provided all of the documents sought by Pogue, it argues strenuously that it was not required to do so for a number of reasons. In no sense has Northwestern Mutual admitted that it failed to produce "relevant and necessary documents."

The only document that Pogue's motion and reply address in any detail is the "Guidelines Manual." Pogue devotes little attention to the other documents listed in note 2 herein; accordingly, the Court will only address them briefly here. Pogue argues repeatedly that the other documents are relevant to the issues presented in this case. However, he does not point to specific written discovery requests that he contends should have prompted Northwestern Mutual to produce those documents. Any number of documents may be *relevant* to a lawsuit, but unless those documents fall within the scope of a party's required Rule 26(a)(1) initial disclosures or a discovery request, there is no obligation to produce the documents. In this case, Pogue fails to show that the documents listed in his motion to reopen the deposition (and reproduced here at note 2) were within the scope of a request for production or deposition notice. Having reviewed Pogue's first and second sets of written discovery requests and the 30(b)(6) deposition notice, the Court finds that Pogue did not expressly request production of the documents listed in his motion, other than the Guidelines Manual . Moreover, to the extent that any of those documents could be interpreted as requesting documents regarding Northwestern Mutual's "reserves" on

11

Pogue's claim, which Pogue did request in Request for Production No. 10 and the fourth deposition notice topic, the Court notes that Northwestern Mutual objected to production of such documents on several bases.[3] (*See* DN 117-6 at 32 (Request for Production #10); DN 117-10 at 3 (deposition notice, Matters to be Covered no. 4).)  Pogue chose not to move to compel production of additional reserves-related materials or any of the other materials now listed in his motion to reopen the 30(b)(6) deposition.

Finally, as Northwestern Mutual argues, it appears that the purposes for which Pogue seeks those documents relate to his bad faith claims, which were bifurcated and stayed -- on Pogue's motion -- and not to his active breach of contract claim.  (*See* DN 26 (bifurcating breach of contract claim from bad faith claims and staying discovery on bad faith claims).)  Pogue expressly argues, "The financial reports and statements (i.e. blue blanks, balance sheets, deviation standards, etc.) are all likely to show the significant financial interest NWML had to deny Dr. Pogue's claim for long term disability benefits (i.e. its credibility to the jury)."  (DN 114 at 2.)  In short, the Court agrees with Northwestern Mutual that the purposes for which Pogue seeks these documents -- based on Pogue's own statements -- relate to his bad faith claims and not to the underlying breach of contract claim.  For the foregoing reasons, the Court declines to grant Pogue leave to reopen the 30(b)(6) deposition on the ground that Northwestern Mutual failed to produce the documents.

---

[3]     In its first responses to Pogue's first set of written discovery, Northwestern Mutual objected to production of "reserves for Plaintiff's claim" on the bases of vagueness, overbreadth, undue burden, and irrelevance, and further stated that "its Disability Income Department neither creates nor maintains reserve figures."  (DN 117-6 at 32 (response to Request for Production #10).)  In its first supplemental responses to the same set of discovery requests, Northwestern Mutual further objected "on the grounds that [the request] seeks material that is related to Plaintiff's bad faith claims on which discovery has been stayed."  (DN 117-7 at 25.)  In its second supplemental responses, Northwestern Mutual produced a single page of documentation.  (DN 117-8 at 21.)

With respect to the Guidelines Manual, Northwestern Mutual appears to concede that the Manual was within the scope of one of Pogue's requests for production.  (*See* DN 117-6 at 28 (Request for Production #3: "Claim administration materials and manuals utilized by, or available to, the disability claims unit.").)  Northwestern Mutual objected to this request on the grounds of undue burden, vagueness, overbreadth, irrelevance, possible protection under the attorney-client privilege or work product doctrine, and that the request seeks material that is a trade secret, confidential, and proprietary.  (*Id.* at 28-29)  However, Northwestern Mutual stated that "upon entry of a mutually agreeable Protective Order, Northwestern Mutual will produce the following manuals all as they were in effect as of January 9, 2014: Disability Benefit Guidelines, Disability Income Benefit Legislative Restrictions Manual, [and] Disability Income Benefits Financial Handbook."  (*Id.* at 29.)   Northwestern Mutual later supplemented this response to state that, "upon entry of a mutually agreeable Protective Order and lifting of the stay of discovery concerning Plaintiff's bad faith claims, Northwestern Mutual will provide the following manuals as they were in effect as of January 9, 2014: Disability Benefit Guidelines, Disability Income Benefits Legislative Restrictions Manual, [and] Disability Income Benefits Financial Handbook."  (DN 117-7 at 24.)

Counsel for Pogue and Northwestern Mutual exchanged a series of emails regarding the terms of a potential protective order.  (DN 117-9.)  Those emails ceased when Pogue's counsel did not provide a substantive response to Northwestern Mutual's counsel's request for comments on some proposed changes to the draft protective order.  (*See* DN 117-0 at 15 ("I'll stand by the prior protective order I sent you.  Thanks.").)  Of course, it was Pogue's prerogative to allow discussions of a protective order to end.  However, Pogue's argument at this juncture that he

13

should be able to reopen the 30(b)(6) deposition due to a failure to produce by Northwestern Mutual fails.  Pogue states in his reply that in effort to conserve costs, he chose to address discovery issues -- including production of the Guidelines Manual -- at the 30(b)(6) deposition rather than to file a motion to compel. (DN 120 at 2.)  He claims that, had the deposition gone forward as originally scheduled in December 2015, he would have had plenty of time to seek further relief, if needed, before the close of discovery. (*Id.*)  However, according to Pogue, Northwestern Mutual opposed the deposition and his efforts to amend the scheduling order. (*Id.* at 3.)  This is unpersuasive.

The original deposition notice was dated October 15, 2015 (DN 29) and set a deposition date of December 9, 2015.  At that time, the deadline for completion of discovery was January 15, 2016 (DN 8).  That deadline was later extended by sixty days (DN 41).  As is described above in the Background section, Pogue first sought to conduct the 30(b)(6) deposition in Louisville rather than in Milwaukee, Northwestern Mutual's principal place of business.  Only after Northwestern Mutual filed a motion for protective order as to the location of deposition (DN 33), the Court ruled on that motion in favor of Northwestern Mutual (DN 63), *and* the Court overruled Pogue's objections regarding the deposition location (DN 79-80) did Pogue finally take the 30(b)(6) deposition.  Due to these self-inflicted delays, Pogue did not actually conduct the deposition (by video, with the witnesses in Milwaukee) until September 28, 2016.  The Court later denied multiple requests by Pogue to extend the deadline for completion of discovery. (*See, e.g.*, DN 71) (extending discovery deadline for purposes of completion of three depositions, including 30(b)(6) deposition, and denying request for extension of fact discovery).)  Senior District Judge Simpson upheld the discovery deadlines, finding that Pogue's objections were

14

without merit.  (*See* DN 89-90; *see also* DN 96, 99, 118-119.)   Ultimately, Pogue took the 30(b)(6) deposition on September 28, 2016, two days before the September 30, 2016 deadline for completion of that and certain other depositions.  (*See* DN 96, 104.)  It is undisputed that, as of September 2016, discovery remained open only for the limited purposes of completing three depositions.  Accordingly, Pogue's purported plan to learn more about the Guidelines Manual after inquiring about it during the 30(b)(6) deposition was not viable under the then-existing scheduling order.

Moreover, the Court rejects Pogue's argument that it was incumbent upon Northwestern Mutual to seek a protective order.  It is clear from the record that Northwestern Mutual made good faith objections to the discovery request that covered the Guidelines Manual and worked to negotiate a protective order.  Pogue's counsel ended those discussions.   Finally, Pogue argues that Northwestern Mutual should have trusted him to keep the Guidelines Manual confidential until the Court resolved the dispute.  Northwestern Mutual was not bound by Pogue's purported instructions regarding confidentiality.[4]  With these instructions, Pogue presumes to take on the role of the Court.  The Federal Rules of Civil Procedure, the Local Rules, and orders of this

---

[4]           Pogue's requests for production include the following language:

> If Defendant asserts, in good faith and in accordance with the Rules, a response should be confidential, Defendant must respond in full to the request but may designate the response as confidential subject to further agreement of the parties and/or order of the Court.  In that event, Plaintiff agrees to maintain the designated documents in confidence until the earlier of such time as the parties enter an agreed order, Defendant withdraws the designation, or the Court finds the documents are not properly subject to confidentiality.

> In the event Defendant intends to assert confidentiality, Defendant must contact Plaintiff at an early date to discuss any proposed confidentiality agreement.   Waiting until Defendant's responses are due to begin any discussions as to confidentiality is inappropriate and shall be deemed a failure to comply with the Rules in good faith.

(DN 114-4 at 3 (Pogue's requests for production).)

Court are *the only authorities* for the parties' rights and responsibilities in conducting civil discovery.  Litigants and their counsel may not impose additional or inconsistent obligations on opposing parties.   The Rules do not require Northwestern Mutual's counsel to produce documents with respect to which it makes a good faith objection and to simply trust that Pogue will maintain the confidentiality of those documents.   Nor do the Rules provide that Northwestern Mutual "shall be deemed" to have violated the Rules if it fails to comply with the instructions in Pogue's discovery requests.  Particularly in a case such as this one, where tension and distrust are high among the parties and their counsel, Pogue's position that Northwestern Mutual should have trusted his word (and acted at his command) is untenable.

Finally, the cases that Pogue cites in support of his position are inapposite.  *See Milby v. Liberty Life Assur. Co. of Boston*, Civil Action No. 3:13-cv-487-CRS, DN 80 (W.D. Ky. Oct. 27, 2016) (a telephonic status conference report stating that, under the specific circumstances of the case, defendant agreed to produce documents and plaintiff agreed to keep them confidential pending a ruling on a motion for protective order); *In re Air Crash at Lexington*, 2009 U.S. Dist. LEXIS 65974, *36-37 (E.D. Ky. June 16, 2009) (stating that burden is on producing party to show good cause for protective order, in context of motion to seal large number of documents which put a "substantial[] burden[]" on the court).  Neither *Air Crash* nor *Milby* is comparable to this case.  If Pogue wished to insist on production of the Guidelines Manual, he could have continued to negotiate with Northwestern Mutual's counsel on a protective order, filed a motion to compel, dropped his arguments (which were proven to be meritless) as to the location of the 30(b)(6) deposition so that it could be held earlier, or taken any number of other tactics.  Based on the foregoing, the Court will not grant Pogue leave to reopen the 30(b)(6) deposition in order

16

to address the Guidelines Manual, as Pogue has had ample opportunity to obtain the information throughout the discovery process.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).

### C.      Alleged Lack of Preparation

The second issue that Pogue raises is whether Northwestern Mutual's corporate representatives were adequately prepared for the deposition.  Pogue's argument regarding inadequate preparation appears to be directed at Hyde; he does not discuss Gurlik.  Accordingly, the Court's discussion focuses on Hyde.[5]

An entity that is served with a notice of a Rule 30(b)(6) deposition is obligated to produce a witness or witnesses knowledgeable about the subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of the corporation.  *Janko Enters. v. Long John Silver's, Inc.*, 2014 U.S. Dist. LEXIS 185334, *12 (W.D. Ky. Apr. 3, 2014) (citing *Dow Corning Corp. v. Weather Shield Mfg., Inc.*, 2011 U.S. Dist. LEXIS 111419, *4 (E.D. Mich. Sept. 29, 2011) (internal citation omitted) and *Martin Co. Coal Corp. v. Universal Underwriters Sycs., Inc.*, 2010 U.S. Dist. LEXIS 118722, *3 (E.D. Ky. Nov. 8, 2010) ("A corporate deponent under Rule 30(b)(6) has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are known or reasonably available to the corporation.") (internal citations omitted)).  "Compliance with Rule 30(b)(6) does not require that the corporate designee have personal knowledge as to all relevant facts within the subject matter of the deposition."  *Janko*

---

[5]      As to Gurlik, based on a review of his deposition transcript (DN 114-1), the Court finds that Gurlik was more than adequately prepared to testify to the fourth topic on the deposition notice, which was the sole topic for which he was designated.  (*See* DN 114-1 at 7 (testifying that he was prepared to testify regarding "No. 4, Northwestern Mutual's reserves for plaintiff's claim in this case").)  Gurlik testified knowledgeably regarding both Northwestern Mutual's policies and practices relating to reserves, generally, and its reserves for Pogue's claim, specifically.

*Enters.*, 2014 U.S. Dist. LEXIS 185334 at *13 (citation omitted).   "It is clearly required, however, that the Rule 30(b)(6) designee be educated and gain the requested knowledge to the extent that it is reasonably available to the corporation."   *Id.* (citations omitted).   One may become so educated "by reasonably obtaining information from corporate documents, current or prior corporate employees, or any other sources reasonably available to the corporation."   *Id.* at *13-14 (citing *Great Am. Ins. Co. of New York v. Vegas Const. Co. Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008)).   Moreover, the 30(b)(6) witness is not expected to perform with absolute perfection. *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) (citation omitted).   "[T]he inability of a designee to answer every question on a particular topic does not necessarily mean that the corporation has failed to comply with its obligations under the Rule." *Janko Enters.*, 2014 U.S. Dist. LEXIS 185334 at *14 (citing *QBE*, 277 F.R.D. at 691).

The party seeking discovery also bears a burden.   The party must describe the matters to be explored in the deposition with "reasonable particularity" to enable the responding business entity to produce a representative who can testify as to the topics identified.   *Id.* (citation omitted).   Nevertheless, corporations are "more than 'mere document-gatherers' and must produce live witnesses adequately prepared to provide testimony that will bind the business entity and explain its position on the chosen deposition topics."   *Id.* (quoting *QBE*, 277 F.R.D. at 691) (internal citation omitted).   "The thought behind this requirement, which may at times be burdensome, is to avoid the practice of 'bandying' by the corporation, where individual officers or employees disclaim knowledge of material facts that are clearly known to the corporate entity."   *Id.* at *15 (citing *QBE*, 277 F.R.D. at 688) (internal citation omitted).   "[W]hile the Rule is not a memory test, the corporation has a clear duty to make a good faith, conscientious effort

18

to designate appropriate persons and to prepare them to testify fully and in a non-evasive fashion about the matters for examination." *Id.* (citation omitted).  "The failure of a corporate deponent to properly designate a Rule 30(b)(6) witness can be deemed a nonappearance that will justify the imposition of sanctions" under Rule 37(d) of the Federal Rules of Civil Procedure.  *Janko Enters.*, 2014 U.S. Dist. LEXIS 185334 at *17 (citing *Resolution Trust Corp. v. So. Union Co., Inc.*, 985 F.2d 196, 198 (5th Cir. 1993)); *see, e.g.*, *Starlight Int'l, Inc. v. Agrlihy*, 186 F.R.D. 626, 639-40 (D. Kan. 1999) (stating that Rule 37(d) permits imposition of sanctions when party or person designated under Rule 30(b)(6) fails to appear for deposition, and that producing an unprepared witness is tantamount to failure to appear) (citation omitted).

Pogue argues that Hyde was unprepared for the deposition in that she was unable to answer questions without referring to the claim file, even though she claimed to have reviewed the file in preparation for the deposition.  Northwestern Mutual argues in response that its witnesses were knowledgeable about and prepared to testify regarding all of the deposition topics except for No. 4, reserves, as to which Gurlik was the designated deponent.  Northwestern Mutual contends that Hyde was the proper designee given her experience and knowledge in reference to the other deposition topics, as well as her extensive involvement in Pogue's claim evaluation and review of the claim file prior to the deposition.  (*See* DN 114-2 at 8 ("I am the top technical person responsible for making sure that our practices are followed, our claims are administered properly, our philosophy is followed, things of that nature."); *id.* at 9 (stating that she has testified on behalf of Northwestern Mutual in the past); *id.* at 14 (stating that she reviewed the claim file and met with counsel in order to prepare for the deposition).)  It also argues that Pogue's counsel's five hours of questioning of Hyde focused on policy language,

19

including many provisions that are not at issue in this case, rather than the deposition topics as to which Hyde was designated to testify. Pogue, in reply, rejects Northwestern Mutual's contention that his counsel was combative or focused on matters beyond the scope of Hyde's knowledge or the deposition notice.

The Court has closely reviewed Hyde's deposition transcript. At no time were Hyde's answers evasive or indicative of inadequate preparation. On the contrary, examination of the entire transcript shows that Hyde was prepared to testify as to the deposition topics for which Northwestern Mutual designated her: topics 1, 2, 3, 5, and 6. (*See* DN 114-2 at 12 (confirming that she is present to testify regarding those topics).) In short, the Court finds that in Hyde, Northwestern Mutual produced a witness knowledgeable about the topics listed in the deposition notice and prepared to testify as to both the knowledge of the corporation and her own knowledge. *See Janko Enters.*, 2014 U.S. Dist. LEXIS 185334 at *12 (citation omitted).

Additionally, the Court rejects Pogue's contention that Hyde's inadequate preparation is betrayed by her desire, at times, to review documents before answering Pogue's counsel's questions. The Court finds that Pogue's counsel badgered Hyde to answer questions without reference to documents when, in reality, her desire to review a particular document in the claim file before answering a particular question was quite reasonable. (*See, e.g.*, DN 114-2 at 32-33 ("I think the easiest way to answer your questions would be if we probably just turn to the language of the benefit itself. [ . . .] If we looked at the policy language itself, it would tell us exactly what's used to calculate the benefit."); *id.* at 130-31 (Hyde, stating that she cannot answer a question without looking at the claim file, and Pogue's counsel, refusing to allow her to do so); *id.* at 135 ("I did answer your question. And if would be able to look at the agreed order,

the denial letter, and the second appeal response letter, I would be able to tell you more specifically.").)  A 30(b)(6) witness is not expected to perform with absolute perfection.  *QBE*, 277 F.R.D. at 691.  It is reasonable to expect the 30(b)(6) deponent, in this case Hyde, to be *familiar* with Pogue's claim file, but it is not reasonable to expect her to have *memorized* the file. In other words, this is not a situation in which the deponent engaged in the practice of "bandying," in which the 30(b)(6) deponent "disclaim[s] knowledge of material facts that are clearly known to the corporate entity."  *Janko Enters.*, 2014 U.S. Dist. LEXIS 185334 at *15 (citing *QBE*, 277 F.R.D. at 688).

The Sixth Circuit requires 30(b)(6) deposition notices to set forth, with "reasonable particularity," the topics to be covered.  On its face, the deposition notice to Northwestern Mutual appeared to meet the reasonable particularity requirement with respect to the six topics identified.  (*See* DN 117-10 at 4-5; note 1, *supra*.)  These six topics are -- appropriately -- related to Pogue's claim for disability benefits and the instant litigation.  (*See id.*)  However, Pogue's counsel's questioning of Hyde routinely ventured outside of the scope of the deposition topics. For example, none of those topics can be reasonably interpreted to require Northwestern Mutual to produce a representative who is capable of recalling or reciting verbatim the entirety of the policy language.  (*See also* DN 114-2 at 56-57 (asking Hyde to describe any "legal authority or case law" provided by the legal department to the claims department); *id.* at 79-81 (asking Hyde about references in policy to Consumer Price Index and committee responsible for drafting policy); *cf.* DN 117-10 at 4-5 (deposition notice topics).)

At one point, after repeated questions from Pogue's counsel that ventured outside the scope of the deposition notice, Hyde and Northwestern Mutual's counsel both attempted to

21

explain Hyde's role for purposes of the 30(b)(6) deposition.

>Q. You understand that you are testifying here today on behalf of Northwestern Mutual, correct?

>**Mr. Coryell** [Northwestern Mutual's counsel]: With respect to the items that are identified in the deposition notice; is that what you mean?

>**By Mr. Grabhorn** [Pogue's counsel]:

>Q. My question was, are you testifying today on behalf of Northwestern Mutual?

>**Mr. Coryell:** Yes, we'll stipulate that she is testifying with -- on behalf of Northwestern Mutual with respect to items that are listed in the 30(b)(6) Notice of Deposition.  We'll stipulate to that, Counsel.

>**Mr. Grabhorn:** I appreciate that, but that's not what I asked.

>**By Mr. Grabhorn:**

>Q. Ms. Hyde, my question is, are you testifying today on behalf of Northwestern Mutual?  It is a yes-or-no question.

>**Mr. Coryell:** No, it is not, Counsel.  She is testifying on behalf of Northwestern Mutual with respect to the matters that you asked Northwestern Mutual to provide a corporate designee to testify on in your 30(b)(6) Deposition Notice.  So, yes.  So we'll stipulate to that, Counsel.

>**Mr. Grabhorn:** No, that's not the question.  I rephrased the question, so it is not a stipulation.  Second, please quit testifying.

>**By Mr. Grabhorn:**

>Q. Ms. Hyde, again the question, and it is a simple question.  Are you testifying today on behalf of Northwestern Mutual?

>A. I am an employee of the company, so any testimony that I give you today is on behalf of the company.  I am testifying on behalf of the company as it relates to Dr. Pogue's claim for disability benefits and what I know to be going on in the disability benefits

22

> area.   And it relates to what is in my deposition subpoena or whatever it was, I cannot nor could anybody else in the company testify to every single thing that is contained, known by, done by, aggregated by the entire company as a whole.   My knowledge is limited to the items in my deposition subpoena.

(DN 114-2 at 118-120.)

Finally, Hyde was designated to speak to, among other topics, "Plaintiff's claim for benefits under the respective insurance policies at issue in this lawsuit."   (DN 117-10 at 4.) Pogue's counsel devoted a substantial amount of time during the deposition to questioning Hyde regarding definitions of terms found in the insurance policy or policies.   Northwestern Mutual argues that these questions were outside the scope of the deposition notice, that the questions were used by Pogue's counsel to waste time, and that Pogue should not be rewarded for this tactic with a second chance to depose Hyde.   The Court agrees.   When asked about policy definitions, Hyde repeatedly testified that certain terms were not defined in the policy and that she would define the term as a general, "layman" understanding of the term.   Pogue's counsel would then ask Hyde to provide her own "layman's" definition of the term.   (*See, e.g.*, DN 114-2 at 64-66 (asking for definitions of a number of terms related to licensed physicians); *id.* at 104 (asking for definition of "incarcerated"); *id.* at 108-09 (asking for definition of "results from".) The deposition notice did not indicate to Northwestern Mutual that Pogue's counsel would ask questions of this kind -- seeking definitions of terms that appear in the insurance policy or other Northwestern Mutual documents.   In short, the Court concludes that Pogue's counsel chose to question Hyde regarding matters outside the scope of the deposition notice, including -- for a significant amount of time -- definitions of terms appearing in the policy.   These questions did not reveal unpreparedness on Hyde's part.

Based on the foregoing, Pogue is not entitled to renew the 30(b)(6) deposition based on a lack of preparation by Northwestern Mutual and/or its witness, Hyde.

### D.     Alleged Improper Objections and Coaching

Pogue argues that Northwestern Mutual's counsel obstructed the 30(b)(6) deposition by making improper speaking and coaching objections.  Northwestern Mutual responds that its attorney's objections were necessary in order to point out improprieties in Pogue's counsel's questioning and to preserve objections in the record, and that Pogue does not argue that the objections prevented him from obtaining any particular testimony.

Rule 30(c)(2) of the Federal Rules of Civil Procedure provides that an objection during a deposition, "whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition -- must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection."  Fed. R. Civ. P. 30(c)(2); *see also Montiel v. Taylor*, 2011 U.S. Dist. LEXIS 43634, *7 (E.D. Tenn. Apr. 21, 2011) ("[] Rule 30(c)(2) allows non-examining counsel at a deposition to do one of two things: (1) listen and (2) make objections.").  The Rule further provides that "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner."  *Id.*  An attorney may instruct a deponent not to speak only when necessary to preserve a privilege, enforce a limitation ordered by the court, or to present a motion to terminate or limit a deposition under Rule 30(d)(3). Fed. R. Civ. P. 30(c)(2).  A number of courts have held that it is improper for a witness not to answer a question on the basis of relevancy.  *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 2017 U.S. Dist. LEXIS 54167, *45 (W.D. Ky. Apr. 10, 2017) (citing *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R. D. 98, 99 (S.D. Ohio 1995), *vacated on*

*other grounds*, 93 F.3d (Fed. Cir. 1996); *Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 1, 6 (D.D.C. 2004)).   "When opposing counsel asks a deponent an irrelevant question, opposing counsel should enter an objection and allow the deponent to answer."  *SCA Hygiene Prods.*, 2017 U.S. Dist. LEXIS 54167 at *45 (citing *Ethicon Endo-Surgery*, 160 F.R.D. at 99).

Rule 30(d)(1) of the Federal Rules of Civil Procedure provides that the Court "must allow additional time [beyond the presumptive limit of one day of seven hours of deposition time] consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1).   Additionally, Rule 30(d)(2) provides that the Court "may impose an appropriate sanction -- including the reasonable expenses and attorney's fees incurred by any party -- on a person who impedes, delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).

Again, the Court has closely reviewed the transcripts of Hyde and Gurlik's depositions. The transcript excerpts that appear in Pogue's motion (DN 114 at 11-14) are accurate representations of Northwestern Mutual's counsel's objections and related statements in the course of the depositions.   At first glance, the Court agrees with Pogue that some of counsel's objections raise concerns.   For example, counsel for Northwestern Mutual had a habit of closing his objection by instructing his witness that he or she could answer the question asked, if he or she knew the answer.   (*See, e.g.* DN 114-2 at 56) ("Object to the form.   That calls for speculation.  If you know.").)  Northwestern Mutual's counsel would do well to avoid using this phrasing in the future, as it can plausibly been seen as coaching witness.   It is the attorney's job to make an objection and then stop talking.   If the deponent does not know how to answer a

25

question, he or she may state as much, but it is not appropriate for his or her attorney to push him or her in that direction.

Notwithstanding the foregoing, the Court finds that, taken in context, counsel did not misuse his objections or coach his witnesses in such a way that would violate Rule 30(c)(2) or require the Court to extend the time for the deposition or otherwise sanction Northwestern Mutual under Rule 30(d)(1) or (2).  Specifically, as is noted above, Rule 30(c)(2) provides that an attorney may make an objection to "any [] aspect of the deposition," on the record, and then the deposition proceeds.  It is customary for an attorney to state on the record the basis for the objection.  This is primarily what Northwestern Mutual's counsel aimed to do.  (*See, e.g.*, DN 114-2 at 162 ("Object to the form and the term 'credibility.'  I don't -- I'm not sure that I understand what that means.  But, object to the form.  The form of the question is vague.").)  Moreover, in the context of this case as a whole and in the context of the 30(b)(6) deposition in particular, it is understandable, even expected, that Northwestern Mutual's counsel provided more detail than usual when objecting in the course of the deposition.  This case has endured an unusual number of discovery disputes, including several deposition-related disputes, the majority of which have been resolved in Northwestern Mutual's favor.  (*See, e.g.*, DN 70 (sanctioning Pogue for his counsel's conduct in relation to the deposition of Pogue's treating physician); (DN 88 (overruling (with one minor exception) Pogue's objections to that order for sanctions).)

Additionally, during the 30(b)(6) deposition, Pogue's counsel acted in an argumentative manner and refused to allow Hyde to review documents before answering a number of questions. Finally, the Court notes that Pogue's counsel's questions at times became so complicated -- for example, by incorporating questions that he asked earlier -- that the witness may reasonably have

26

needed help understanding the questions.  *See Covad*, 267 F.R.D. at 34 (noting that counsel's "questions were on occasion so complicated and compound that the witness needed help to understand them [and that] these questions certainly warranted objection").

In short, Pogue's counsel had ample opportunity to question Gurlik and Hyde, and he chose to ask questions that were outside the scope of the deposition notice, that required the witness to answer questions regarding the policy without permitting her to review relevant documents, and that were posed in an argumentative fashion.  Based on the foregoing, the Court simply cannot conclude that Northwestern Mutual's counsel's conduct impeded or delayed the examination of the 30(b)(6) deponents.  Accordingly, there is no basis on which sanctions should be awarded under Rule 30(d)(2).

### E.    Issue Regarding Court Reporters

The final issue raised in the motion to reopen the 30(b)(6) deposition is that the deposition had to be terminated because the two court reporters could not continue working. Northwestern Mutual credibly states that the court reporter in Milwaukee said that she could contact a colleague about taking over so that the deposition could continue.  This is reflected in the record, which provides as follows:

> **Mr. Coryell:** We are here and prepared to testify in compliance with the deposition notice, even though we are at seven hours for the cumulative depositions.  We are prepared to allow you to proceed with Ms. Hyde for another two hours, which would be seven hours for her, even though I do not think that's required by the rules of procedure.  But in order to make a good faith effort to comply with your deposition notice, we are here prepared to continue the deposition.
>
> It is my understanding that the court reporter has offered to get a substitute court reporter who can come in for the rest of the

> deposition.  And we are prepared to allow her to do that, and stay for another two hours to allow you to complete the deposition.
>
> So you can -- If you want to adjourn the deposition that is your call, but we are prepared to proceed with the deposition as noticed.
>
> **Mr. Grabhorn:** Thank you, Counsel.   the testimony would contradict that.
>
> Court reporter, you may go off the record.  Thank you.

(DN 114-2 at 173-74.)

Northwestern Mutual also says that until the motion was filed, it had no knowledge that a second court reporter was present in Louisville with Pogue's counsel.  While it is certainly unusual that no one in Milwaukee was informed that another court reporter was in Louisville, this is of no moment for purposes of this motion.  The record is clear that Northwestern Mutual and its counsel, as well as the court reporter present with the witness, were prepared and willing to continue with the deposition on that date.  Pogue's counsel chose not to proceed.  This does not provide support for Pogue's request that the deposition be reopened.  As the Court has concluded that Pogue is not entitled to have the deposition be reopened on any of the other grounds raised in his motion, this issue certainly does not provide a reason to do so.

### F.  Attorney's Fees

Pogue requests that the Court order Northwestern Mutual to reimburse him for his attorney's fees and expenses incurred in conjunction with the initial 30(b)(6) deposition.  The Court has concluded that Pogue is not entitled to reopen the 30(b)(6) deposition.  Consistent with the Court's analysis herein, no justification exists for awarding Pogue his fees and expenses associated with the initial deposition.  Accordingly, the motion is denied to the extent that it seeks reimbursement of fees and expenses.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Pogue's motion to reopen his Rule 30(b)(6) deposition of Northwestern Mutual (DN 114) is **DENIED**.

cc:  Counsel of record