UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES H. POGUE                                                                                    PLAINTIFF


v.                                                                         CIVIL ACTION NO. 3:14-CV-00598-CRS


NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY                                                                                 DEFENDANT


# MEMORANDUM OPINION

## I.   Introduction

This case is before the court on defendant Northwestern Mutual Life Insurance Company's (hereinafter "NWML") motion for summary judgment. ECF No. 133. Plaintiff James H. Pogue (hereinafter "Pogue") responded, submitting two Rule 56(d) objections and opposing the motion for summary judgment. ECF No. 144. NWML subsequently replied. ECF No. 157. For the reasons set forth below, Pogue's Rule 56(d) objections will be overruled and NWML's motion for summary judgment will be granted.

## II.   Factual Background

This case arises from NWML's denial of Pogue's claim for benefits under his three long-term disability insurance policies. Pogue is a physician who previously practiced medicine in Nashville, Tennessee. ECF No. 133-3, p. 5. On April 28, 2013, Pogue submitted a request for disability benefits to NWML, stating that he suffered from a "severe anxiety disorder" and that "on Nov. 9, 2012 [he] had a total nervous breakdown and could no longer think clearly enough to practice medicine." *Id.* at 3. Pogue's request also stated that he "chose to surrender [his] medical] license due to a feeling of personal incompetence to handle work stresses." *Id.* at 7.

On January 9, 2014, NWML issued a letter denying Pogue's request for total disability benefits. ECF No. 117-3. The letter stated that NWML did "not find proof of disability" and believed that Pogue "made intentional, and even fraudulent, misrepresentations throughout [his] claim in order to deceive [NWML] into providing benefits. . ." *Id.* at 8. The insurance company pointed to several discrepancies in the information Pogue provided. Of particular significance was an order issued by the Tennessee Board of Medical Examiners dated November 28, 2012— less than three weeks after Pogue's alleged nervous breakdown—suspending Pogue's medical license due to his improper prescribing of controlled substances to patients and family members. *Id.* at 6; ECF No. 124-3. NWML referred to Pogue's insurance contract, which states that "there will be no benefits for a disability or loss that results from or is caused by or contributed to by the suspension, revocation, or surrender of a professional or occupational license or certificate." ECF No. 117-3, p. 8. NWML concluded that "although [Pogue] may [have had] a nervous breakdown on November 9, 2012 . . . [it] was unable to establish proof that, apart from [his] licensing issues, [he had] been unable to perform the duties of [his] occupation because of a disabling psychiatric illness." *Id.* Pogue appealed this denial twice, and in both instances NWML upheld the claim denial. ECF No. 117-4; ECF No. 117-5.

On August 6, 2014, Pogue filed suit against NWML in Jefferson Circuit Court, alleging breach of contract, common law bad faith, violation of the Kentucky Unfair Claims Settlement Practices Act, and violation of the Kentucky Consumer Protection Act.[1] ECF No. 1. The case was subsequently removed to this court. *Id.*

NWML now moves for summary judgment, asserting that Pogue's claim of disability is expressly excluded under the terms of his three insurance policies. ECF No. 133-1.

---

[1] This court bifurcated Pogue's breach of contract claims from the remainder of his claims. ECF No. 26. NWML's motion for summary judgment applies to the breach of contract claims.

2

III. Legal Standard

The trial court shall grant summary judgment in a case "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of "demonstrating that [there is] no genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to "point to evidence demonstrating that there *is* a genuine issue of material fact for trial." *Id.* at 323 (emphasis added).

In considering a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There must actually be "evidence on which the jury could reasonably find for the [nonmoving] party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

IV. Discussion

A. Rule 56(d) Objections

As an initial matter, Pogue sets forth two Rule 56(d) objections claiming that (i) he has not been permitted to seek necessary discovery from NWML specific to his breach of contract claims, and (ii) NWML relies on documents in its motion that are not properly before the court. Pogue requests that the court deny NWML's motion for summary judgment, or alternatively, defer the motion to allow him a reasonable opportunity to obtain discovery.

i. Need For Additional Discovery

First, Pogue claims that he has not been permitted to seek necessary discovery from NWML specific to his breach of contract claims. A declaration from Pogue's attorney states that "it is necessary for Dr. Pogue to obtain the relevant withheld documents, to continue the deposition of NWML's 30(b)(6) witness, to depose NWML's disclosed experts, and to disclose any additional experts." ECF No. 144-14, p. 7.

The court will overrule this objection. Pogue previously set forth these arguments in his motion to reopen the Rule 30(b)(6) deposition and his motion for an extension of time to complete discovery. ECF No. 114; ECF No. 46. Magistrate Judge Lindsay denied both of Pogue's motions after careful review of the record. ECF No. 132, ECF No. 71. In the present objection, Pogue merely restates his arguments without providing any additional reasons as to why more time for discovery is needed. Therefore, this objection is without merit.

ii. NWML's Use of Evidence

Second, Pogue claims that NWML relies on evidence in its motion that is not properly before the court. Specifically, Pogue asserts that the depositions of him and Dr. Asta, and the reports from Drs. Logan, Swanson, Buchholz, and Butler are inadmissible because they are not authenticated. ECF No. 144-1, p. 11-12. Additionally, Pogue claims that the statements from a telephone conversation between Drs. Logan and Asta constitute inadmissible hearsay.

The court will likewise overrule this objection. NWML provided the court reporter certifications for the two depositions in its reply, curing any issue as to their authenticity. ECF No. 146-3. Further, it is unnecessary for the court to rule on the admissibility of the reports from Drs. Logan, Swanson, Buchholz, and Butler and the statements from the telephone conversation

between Drs. Logan and Asta, as these pieces of evidence were not considered in the present ruling.[2] Accordingly, this objection is without merit.

B. <u>Motion for Summary Judgment</u>

Turning to the motion for summary judgment, NWML contends that Pogue's breach of contract claims fail as a matter of law because his alleged disability is expressly excluded by the terms of his insurance policies. Alternatively, NWML argues that Pogue is not entitled to recovery under the policies, as his legal disability preceded his factual disability.[3] These arguments will be addressed in further detail below.

i. <u>Whether Pogue's Alleged Disability Is Excluded Under the Terms of His Insurance Policies</u>

NWML asserts that it is entitled to summary judgment because Pogue's alleged disability is excluded from coverage under his insurance policies, as it was caused by or contributed to by the suspension of his medical license. Pogue, by contrast, argues that NWML cannot rely on this exclusion because it was not the reason cited in his claim denial letters. Moreover, Pogue argues that the exclusion does not apply because his disability was not caused by or contributed to by his license suspension. Viewing the facts in the light most favorable to Pogue, the court agrees with NWML.

While a claimant bears the initial burden of proving that his claim is covered under an insurance policy, "the insurer carries the burden if it claims that one of the policy exclusions applies to the claimant and prevents recovery." *Farmers Bank & Trust Co. of Winchester v.*

---

[2] The court further notes that Pogue himself cited to a report in his response brief that was previously ruled inadmissible by this court. ECF No. 143.
[3] Because the court finds that NWML is entitled to summary judgment on either of these arguments, it declines to consider NWML's remaining two arguments.

5

*Transamerica Ins. Co.*, 674 F.2d 548, 550 (6th Cir. 1982).[4] Once such a showing is made, the burden shifts back to the claimant to demonstrate that the exclusion is not applicable. *Id.* When the terms of an exclusionary clause in an insurance policy are unambiguous, "it is the duty of the Court to apply the words used in their ordinary meaning and neither party is to be favored in their construction." *Beef N' Bird of America, Inc. for Use and Benefit of Galbreath v. Continental Cas. Co.*, 803 S.W.2d 234, 237 (Tenn. App. Oct. 10, 1990).

The relevant exclusion in the insurance policies at issue is unambiguous. All three of Pogue's policies state that "there will be no benefits for a disability or loss that results from or is caused by or contributed to by . . . the suspension, revocation, or surrender of a professional or occupational license or certificate." Replica of Policy D1596321, ECF No. 133-18, p. 14; Replica of Policy D1596333, ECF No. 133-19, p. 14; Replica of Policy D1650161, ECF No. 133-20, p. 12. Thus, any claimant whose disability is brought about in whole or in part by the suspension of his professional license cannot recover under the policies.[5]

There is ample evidence that Pogue's disability was caused by or contributed to by the suspension of his medical license. In Pogue's request for disability benefits submitted to NWML, he states that "on Nov. 9, 2012, I had a total nervous breakdown and could no longer think clearly enough to continue practicing medicine." ECF No. 133-3, p. 3. The evaluation performed by the Vanderbilt Comprehensive Assessment Program (hereinafter "VCAP") sheds light on the events leading to Pogue's alleged breakdown. ECF No. 124-8. The VCAP report states:

---

[4] Under Kentucky's choice of law rules, contract disputes should be resolved using the law of the state with "the most significant relationship to the transaction of the parties." *LaCrosse v. Owners Ins. Co.*, 531 S.W.3d 25, 30 (Ky. App. Dec. 22, 2016). Because Pogue was a physician practicing in Tennessee when he entered into the contracts for disability insurance with NWML, Tennessee law will be applied.

[5] The word 'cause' in this context means "something that brings about an effect or a result." See https://www.merriam-webster.com/dictionary/cause.
The word 'contribute' in this context means "to play a significant part in bringing about an end or result." See https://www.merriam-webster.com/dictionary/contribute.

> Dr. Pogue reported that the current issue began in 2009 when a patient was dismissed because of her breaching her pain contract . . .
>
> The Medical Board responded to complaints [about Pogue] by reviewing a number of his charts in which patient care and documentation issues (lack of adequate physical examination, lack of appropriate consultation) were identified. [Pogue] said that the Board continued to ask for charts for review and he was becoming increasingly stressed. He said that his blood pressure was increasing, he was not sleeping, his cortisol levels were increasing, and he was breaking down emotionally. He ended up 'having a nervous breakdown in [his] lawyer's office' and they decided to propose a consent order to the Board. *Id.* at 4.

This documentation—which is based on Pogue's own statements—suggests that Pogue's breakdown was at least in part due to the stress of having the Tennessee Medical Board investigate his prescribing practices and eventually suspend his license.

This is further supported by the statements of Pogue's treating physicians. Dr. Stephen Adams, the first physician to see Pogue after his alleged breakdown, stated in his patient notes that Pogue had "some PTSD type symptoms related to . . . [the] TN Board of ME evaluating his prescribing practices . . ." ECF No. 133-21, p. 2. Likewise, Dr. Roy Asta, Pogue's psychiatrist, noted in a statement submitted to NWML that a "professional + ethics violation Tenn. Dept. of Health" was a barrier to Pogue returning to work. ECF No. 124-9, p. 4. There are also several references to Pogue's license suspension in Dr. Asta's progress notes. He states that Pogue had "a depressive episode after . . . the problems with the medical board." ECF No. 133-22, p. 3. He also notes that he believes Pogue's condition to be "secondary to the problems he had with the medical board . . ." ECF No. 133-23, p. 2.

Pogue fails to rebut NWML's assertion that his disability is excluded under the terms of the insurance policies.[6] Pogue relies on declarations from two experts to support his assertion that his disability is the result of a deteriorating medical condition, not the suspension of his

---
[6] Pogue's argument that NWML cannot rely on this exclusion because it was not the reason provided in his claim denial letters is without merit. NWML expressly cited to the exclusion pertaining to disabilities caused by or contributed to by license suspensions in its first denial letter. ECF No. 117-3, p. 8.

medical license. The first declaration—authored by Dr. Michael Cecil—cannot be considered, as this court previously found Dr. Cecil's expert opinions and related testimony to be inadmissible due to reliability concerns. ECF No. 144-11, ECF No. 143. The second declaration—authored by Dr. Roy Asta—contains similar issues with reliability. Dr. Asta's declaration contradicts his earlier progress notes and deposition without providing any explanation for his change in opinion.[7] Moreover, his declaration contains misleading statements.[8] Accordingly, the court gives little weight to his declaration.

Based on the evidence, the court concludes that Pogue's alleged disability is caused by or contributed to by the suspension of his medical license. Because his insurance contracts expressly preclude payment in such instances, Pogue's breach of contract claims fail as a matter of law.

C. <u>Whether Pogue's Legal Disability Preceded His Factual Disability</u>

Although the decision above is dispositive in this matter, the court will briefly consider NWML's alternative argument. NWML contends that even if Pogue's license suspension did not cause or contribute to his disability, it is still entitled to summary judgment because Pogue's legal disability—his license suspension—occurred before his alleged factual disability—his debilitating anxiety and depression. Pogue counters that his factual disability arose prior to his

---

[7] For example, Dr. Asta's 2017 declaration states that "Dr. Pogue's underlying medical conditions and symptoms were the root cause of his improper prescription and patient documentation issues that led to the Tennessee Medical Board's investigation." ECF No. 144-10, p. 2. This directly contradicts Dr. Asta's 2013 progress note, which states that he finds Pogue's condition to be "secondary to the problems he had with the medical board." ECF No. 133-23, p. 2. It also contradicts Dr. Asta's 2016 deposition, in which he acknowledges that Pogue's license suspension was "[a] significant creator of his condition." ECF No. 124-6, p. 8.

[8] Dr. Asta's 2017 declaration states: "In November 2012, because of his deteriorating condition, I felt Dr. Pogue should not continue practicing medicine [and] therefore, I advised Dr. Pogue to take time off work." ECF No. 144-10, p. 2. He further states that Pogue's "willingness to forgo his medical license . . . was a good first step in his treatment plan." *Id.* This is a mischaracterization of what actually occurred. The first time Dr. Asta suggested Pogue take time off work was in a phone message to Pogue's wife on November 26, 2012. ECF No. 144-5, p. 46. This occurred five days after Pogue signed the Tennessee Board of Medicine's order suspending his medical license. ECF No. 124-3, p. 12. In reality, Pogue had no choice but to agree to the license suspension.

8

legal disability, and in fact was the cause of his legal disability. Taking the facts in the light most favorable to Pogue, the court agrees with NWML.

It is widely accepted that disability insurance policies cover factual disabilities, not legal disabilities. *Massachusetts Mutual Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 26 (Tenn. App. Sept. 5, 2002); *See also Solomon v. Royal Maccabees Life Ins. Co.*, 622 N.W.2d 101, 104 (Mich. App. Nov. 28, 2000); *Gassler v. Monarch Life Ins. Co.*, 276 A.D.2d 585, 586 (Ny. App. Oct. 16, 2000). A factual disability is defined as "an incapacity caused by illness or injury that prevents a person from engaging in his or her occupation." *Massachusetts Mutual Life*, 104 S.W.3d at 26. By contrast, a legal disability is defined as "all circumstances in which the law does not permit a person to engage in his or her profession even though he or she may be physically and mentally able to do so." *Id.* Examples of legal disability include "incarceration, the revocation or suspension of a professional license, surrendering a professional license as part of a plea agreement or to avoid disciplinary action, or practice restrictions imposed by a licensing board." *Id.* When a legal disability precedes a factual disability, "the courts uniformly hold that the claimant is not entitled to disability benefits." *Id.*

There is no evidence in the record that Pogue's factual disability preceded his legal disability. Although it is true that Pogue was treated for anxiety and depression beginning in 2005, Pogue continued to work as a physician until his license was suspended in November 2012. ECF No. 144-5, pp. 1, ECF No. 124-3, p. 2. The progress notes from Pogue's treating psychiatrist—Dr. Asta—do not indicate that Pogue's condition impacted his ability to perform his professional duties as a physician. ECF No. 144-5, pp. 1-10, 12-17, 20-39. In fact, Dr. Asta did not recommend that Pogue take time off work until November 26, 2012—five days after

9

Pogue signed the Tennessee Board of Medicine's agreed order suspending his license. ECF No. 144-5, p. 46.

Pogue's evidence that his factual disability arose before his legal disability is unconvincing. Pogue cites to a report by Dr. James Gallagher, which reviews Pogue's medical records and reaches several conclusions. However, Dr. Gallagher has not been disclosed as one of Pogue's treating physicians, nor as an expert witness or rebuttal expert witness in this case. ECF No. 146-4, ECF No. 146-5. Therefore, his opinions cannot be considered. Pogue also cites to the decision of a Social Security Administration (SSA) judge, who concluded that Pogue "has been disabled under section 1614(a)(3)(A) of the Social Security Act since November 9, 2012." ECF No. 124-18, p. 12. However, the inquiry into an individual's disability for purposes of determining social security benefits is different than it is for purposes of determining benefits under a long-term disability insurance policy. The SSA judge and evaluators did not have access to all of the evidence presented in this case. In fact, the SSA decision was largely based on Pogue's own statements and Dr. Asta's 2017 declaration, which has been called into question by this court. Therefore, the conclusion of the SSA judge is given little weight.

Because it is clear that Pogue's factual disability did not precede his legal disability, his breach of contract claims fail as a matter of law.

V.  <u>Conclusion</u>

For the reasons set forth above, Pogue's Rule 56(d) objections will be overruled, and NWML's motion for summary judgment will be granted. Because Pogue is not entitled to disability benefits under his insurance policies, his claims against NWML for common law bad faith, violation of the Kentucky Unfair Claims Settlement Practices Act, and violation of the Kentucky Consumer Protection Act likewise fail as a matter of law. An order will be entered in accordance with this memorandum.

March 7, 2018

**Charles R. Simpson III, Senior Judge
United States District Court**